THE PENNSYLVANIA COMPANY

*v.*

HENRY R. BOND.

*Opinion filed February 18, 1903—Rehearing denied April 20, 1903.*

|202 | 95|
|108a | 513|
|109a | 288|
|109a | 337|
|202 | 95|
|110a | 594|

1. ESTOPPEL—*when the question of estoppel is not res judicata.* The question whether a property owner, by virtue of his receiving condemnation money under a judgment in a suit by the city to condemn his property for widening a street, is estopped to enjoin a railroad company from laying additional tracks in such street is not *res judicata* by virtue of a decision by the Supreme Court on a former appeal holding that complainant's bill stated a good cause of action, where there was nothing in the pleadings at that time to raise the question of estoppel.

2. SAME—*when party is not estopped to enjoin railroad company from laying additional tracks.* The owner of abutting property, a strip of which was condemned by a city for widening a street, is not estopped by the condemnation judgment and the receipt by him of the compensation awarded to enjoin a railroad company from fencing in the old roadway of the street and laying additional tracks therein, where the condemnation ordinance contained no reference to the ordinance under which the company claims its right to proceed, where the judgment does not show compensation was allowed for any purpose but the taking of the land for street purposes, and where the company was informed before judgment was entered that such owner would resist the appropriation of the old bed of the street to its use.

3. STREETS AND ALLEYS—*extent of legitimate use of street for railroad purposes.* The use of streets for steam railroads is legitimate only to the extent that such use shall not exclude other modes of conveyance, and it is not lawful to permit two-thirds of a street to be absolutely turned over to a railroad company if under the law a different result can be attained.

*Pennsylvania Co. v. Bond,* 99 Ill. App. 535, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

This record brings up on appeal by appellant a decree of the circuit court of Cook county entered June 6, 1900, perpetually enjoining the appellant from laying down or constructing upon the street known as Stewart ave-

nue, in the city of Chicago, at any point east of the west thirty-three feet of said avenue along and past lot 1, in block 1, in the United States Bank addition to Chicago, any railroad track or tracks in addition to the track which at the beginning of the suit was already laid upon said portion of said avenue, and from erecting any fence or wall lengthwise in said Stewart avenue east of the west thirty-three feet of said avenue or upon or along the east line of the west sixty-six feet of said avenue, and from operating any locomotive or car or train of cars upon any such additional track or tracks laid or constructed. The decree also provides that if it shall appear that said Pennsylvania Company has, or that its officers, agents, servants, attorneys or lessors for it have, since the beginning of the suit, laid or caused to be laid any railroad track past said lot 1, or if it shall appear that since the filing of the bill any fence or wall has been erected by said defendant or its officers or lessor along and past said lot 1, then it is decreed that the said defendant be perpetually enjoined from further maintaining or permitting or using such additional track or fence anywhere upon said portions of said avenue along and past lot 1, and that within thirty days after the entry of a final decree the defendant shall remove such additional track or tracks and fence. Upon appeal to the Appellate Court the latter part of the decree of the circuit court was modified by changing it from the subjunctive mood, so that it provided, that it appearing to the court, from the record, that the defendant has, since the beginning of the suit, laid or caused to be laid a railroad track in addition to the one already upon the avenue at the beginning of the suit, and that the defendant has erected a fence along and past lot 1, it is decreed that the defendant, its agents, etc., be perpetually enjoined from further maintaining, etc., such additional track or fence, and shall within thirty days after the entry of the decree remove such additional track and fence.

The bill shows that appellee is the owner in fee of lots 1 and 2, block 1, of the United States Bank addition to Chicago, situated at the south-east corner of Twenty-sixth street and Stewart avenue, and that he is also the owner of the fee of the east half, or thirty-three feet, of Stewart avenue as originally laid out, so far as said avenue abutted on said lot 1, for a distance of about two hundred and thirty-two feet north and south. Appellee complains that appellant, without compensation to him as owner of the fee, in such part of said avenue, without authority of law and solely upon the authority of an ordinance of the city of Chicago enacted July 21, 1887, is about to lay down and operate certain railroad tracks thereon and to otherwise unlawfully obstruct and appropriate that part of said avenue the fee of which the complainant owns.

It is stated in the bill that appellant's railway, consisting originally of two main tracks running along the west half of Stewart avenue, was owned prior to July 1, 1869, by the Pittsburgh, Fort Wayne and Chicago Railway Company, which company leased the same to the Pennsylvania Railroad Company on July 7, 1869, for 999 years; that the lease was subsequently assigned to appellant, which now holds and operates the said railroad; that July 21, 1887, the Pittsburgh, Fort Wayne and Chicago Railway Company, its lessees and successors, were authorized by city ordinance of that date to construct and operate two additional tracks in Stewart avenue, provided said company should pay the cost of widening said avenue to ninety-nine feet. The additional thirty-three feet added to the width of the avenue for such purpose was, by condemnation proceedings instituted in accordance with an ordinance of February 13, 1888, taken from appellee's property on the east side of Stewart avenue, and appellee has been duly paid the compensation awarded for the land so taken. The ordinance of July 21, 1887, which granted to the Fort Wayne company,

202—7

its lessees and successors, permission and authority to
lay down, maintain and operate two additional tracks
in Stewart avenue as originally laid out, also provided
that, besides paying the damages and costs of widening
by condemnation proceedings, the company should also
grade, curb and macadamize twenty-three feet of said
additional thirty-three feet, build a wooden sidewalk ten
feet wide on the east side of said additional thirty-three
feet at its own expense, remove old lamp-posts, drains
and water pipes and replace the same within the said
added thirty-three feet, and complete these improve-
ments before it exercised rights under said ordinance.
The company was also required to erect and forever
maintain at its own expense on the east line of Stew-
art avenue as it was laid out before the addition of said
thirty-three feet to the east side thereof, a substantial
fence of wood, iron, brick or stone, of such design and
size as should be determined by the city department
of public works, with suitable gates at street crossings.
Upon completion of these improvements the said railway
company and its lessees were by said ordinance author-
ized to operate engines and trains at an increased rate
of speed.   It appears that the effect of this ordinance
was to authorize the railroad company to construct and
operate two additional tracks in the original Stewart
avenue, making four tracks in all, and to fence in such
tracks, thus exclusively occupying practically the whole
of the original street.   It appears from the bill that ap-
pellant complied with these conditions, paid for remov-
ing water pipes and hydrants and for constructing new
sewers, and for making the other improvements stipu-
lated to be done at its own expense.   The prayer of the
bill is that appellant and its lessor may be restrained
from laying, under said ordinance of July 21, 1887, any
additional railroad tracks upon Stewart avenue in front
of appellee's property, from erecting a fence or wall of
any kind along the east side of the west sixty-six feet of

said avenue, and from running locomotives or cars at an increased rate of speed authorized by said ordinance.

The ordinance of February 13, 1888, provided for the widening of Stewart avenue to the width of ninety-nine feet by condemning the property necessary therefor on the east side thereof, in accordance with the plan annexed thereto, and further provided that the cost thereof should be paid for in accordance with the statute. No reference was made in either ordinance to the other.

The judgment in condemnation in favor of the appellee for the taking and damaging of the thirty-three feet mentioned, to widen Stewart avenue, provided that the amount was paid as a just compensation "for the land and property, and of the improvements thereon and all interest therein, by the proposed public improvement mentioned in said petition, and that no other property, or interest therein, is taken or damaged in this proceeding, and the said owner or owners shall, respectively, accept such sum awarded on account of said improvement as full compensation therefor." The agent who was conducting the negotiations for appellee, fearing that it was the intention of the appellant to erect a fence and lay additional tracks, informed the appellant, before the judgment was entered in the condemnation suit, that, whatever the result of the condemnation case might be, appellee would try by legal means to stop the laying of such additional tracks, the erection of the fence and the appropriation of the original Stewart avenue for railroad purposes; that the award of damages was not meant to cover or affect any claim of right which might thereby accrue to appellee in case of the occupancy of the old bed of the street by the railroad company.

Appellant's answer practically admits all the material allegations of the bill, but avers that it has paid into court for the benefit of the property owners whose land was condemned for the widening of Stewart avenue, more than $68,000; that in addition thereto it has spent over

$8000 in the removal of lamp-posts, drain pipes, water pipes, etc., formerly lying in Stewart avenue, and that it has expended over $68,000 in the construction of viaducts, etc.; that with the knowledge of the complainant it paid the condemnation money for the lands taken under the proceedings by the suit for widening the streets; that the amount paid the complainant was fixed by agreement between the complainant and his agents and the attorney and agents of the defendant, and the plaintiff and his agents knew that the defendant was relying upon the ordinance of 1887 and was making the payments pursuant thereto, and with such knowledge the defendant accepted the money so paid to him and is therefore estopped to prosecute his suit, and denies that complainant is entitled to the relief, or any part thereof, prayed.

LOESCH BROS. & HOWELL, (FRANK J. LOESCH, of counsel,) for appellant.

RITCHIE & ESHER, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

Several errors are assigned by appellant why the decree below should be reversed, but as appellant discusses in its brief simply the question of estoppel, we shall therefore consider all other points abandoned.

Appellant insists that by the entry of judgment in the condemnation suit brought by the city against appellee for his compensation and damages for the land taken for widening Stewart avenue, which sum was agreed upon by the parties; the payment and receipt by appellee of the money so paid; the payment of large sums of money by the railroad companies for land acquired and work performed, all being done with the knowledge of appellee and in pursuance of the ordinance of July 21, 1887, giving appellant and its lessors the right to lay additional tracks on Stewart avenue and requiring them to lay out a new street and to build a fence on the east

line of old Stewart avenue, the appellee is estopped, in equity, from enjoining appellant's use of Stewart avenue in accordance with said ordinance.   Appellee contends (*a*) that the question of estoppel is *res judicata*, as this case came before this court on appeal upon demurrer to the bill, which was sustained by the circuit court and reversed by this court, wherein we held the bill stated a good cause of action; (*Bond* v. *Pennsylvania Co.* 171 Ill. 508;) (*b*) upon the merits of the defense of estoppel the record shows nothing to sustain it; (*c*) nothing whatever was done by appellee or his agents, nor was anything omitted to be done by them, which could or did mislead the defendant in any way; (*d*) the use made of the bed of the old street by the railroad companies after this award was paid is not the use contemplated in the condemnation proceedings.

*First*—The contention of appellee that the question of estoppel is *res judicata* cannot be admitted.   The bill, as originally framed, contained this averment: "Your orator shows that the said Pittsburgh, Fort Wayne and Chicago Railway Company has heretofore in part bought up and in part caused to be condemned for a street, (in the name of said city of Chicago and by the condemnation proceedings hereinbefore mentioned,) at its own expense, sufficient land adjoining the east side of said Stewart avenue between Bushnell street and Egan avenue, (formerly the southern boundary of said city of Chicago,) to widen said Stewart avenue from sixty-six feet to ninety-nine feet, all in accordance with the terms of section 2 of said pretended ordinance of July 21, 1887, and in execution of the contract which said ordinance purports to create." But before the demurrer was interposed and the judgment of the circuit court had thereon, the bill was amended by striking out certain portions thereof, so that the clause read: "And your orator shows that the said city of Chicago, by the condemnation proceeding hereinbefore mentioned, has condemned sufficient land adjoining the east

side of said Stewart avenue between Bushnell street and Egan avenue, (formerly the southern boundary of said city of Chicago,) to widen said Stewart avenue from sixty-six feet to ninety-nine feet," etc., thereby eliminating from the bill the allegation that appellant or its lessor "bought up and in part caused to be condemned for a street, (in the name of said city of Chicago and by the condemnation proceedings hereinbefore mentioned) at its own expense." The foregoing was the only clause of the bill that contained any averment that appellant or its lessor was in any way directly connected with the condemnation proceedings, either by the payment of money or the conduct of the suit. Manifestly, then, there was nothing before the court that could have raised the question of estoppel arising from the payment of the condemnation money and the expenses thereof by appellant, or the Pittsburgh, Fort Wayne and Chicago Railway Company, to appellee or to the court, under the condemnation proceedings prosecuted in the name of the city, or for the supposed use of appellant. It was not until the cause was remanded to the circuit court and the answer of appellant filed set up the matters now relied upon as ground of estoppel that the same became a part of the record of this proceeding. This court, then, could not, on the appeal, have considered that question, and the rule that appellee invokes, that "the principle of *res judicata* on a second appeal of the same cause applies to all questions which might have been decided as materially involved in the cause, whether actually decided or not," as laid down in 2 Encyclopedia of Pleading and Practice, 380, and *Ogden* v. *Larrabee,* 70 Ill. 510, and other cases mentioned in appellee's brief, cannot apply.

*Second*—Upon the question of estoppel, in so far as relates to the knowledge of appellee that the appellant was in fact prosecuting the suit for condemnation in the name of the city for the use of appellant, but two witnesses testified,—Mr. William Ritchie on the part of ap-

pellee and Edwin A. Warfield on the part of appellant. Mr. Warfield testified that his information was that the strip of land known as the Bond property in fact belonged to the Equitable Trust Company of New London, Connecticut, but that the title was in appellee; that a Mr. Kendall, who had died before the hearing of this cause, was the western agent of the trust company, and witness was the real estate agent of the Pittsburgh, Fort Wayne and Chicago Railway Company; that he began negotiations with Mr. Kendall for this strip of land sought to be taken by the condemnation proceeding for the widening of Stewart avenue, and that Mr. Kendall asked $40,000 for the strip, and stated in connection with that demand that the trust company owned to the center of old Stewart avenue; that the railroad was already in possession of a part of the trust company's land, and that in any settlement that should be made the railroad company would have to pay a price which would settle that question, as well as the value of the strip which was sought to be purchased for the widening of the street; that after he had reached an agreement as to the amount that was to be paid he turned the matter over to Mr. F. S. Winston, who was the attorney for the railroad company and was conducting the condemnation proceedings in the name of the city by special appointment for that purpose. This witness further stated that he did not acquire the information, at any time before the money was paid, that Mr. Bond expected to assert his legal rights to keep the railroad company from erecting its fence and laying additional tracks on Stewart avenue.

Mr. Ritchie testified that he was the attorney for the Equitable Trust Company and for Mr. Bond prior to the condemnation proceeding; that he knew of the ordinance of 1887, and that in so far as related to the interests of Mr. Bond in the land in controversy Mr. Kendall had almost nothing to do; that when the condemnation proceedings were brought he represented Mr. Bond, and because

of his non-residence procured the case to be certified to
the Federal court, before Judge Blodgett; that during the
condemnation proceedings before Judge Blodgett, in open
court, he made objection, in the presence of Mr. Winston,
that the condemnation was practically a bogus affair;
that although it was being conducted nominally by the
city, it was in reality in the interest of the railroad com-
panies, and that they intended afterwards to take ex-
clusive possession of old Stewart avenue, and in fact to
widen the same by means of this condemnation proceed-
ing; that Judge Blodgett overruled the objection on the
ground that the city was the petitioner of record in the
condemnation case and that his client could not dispute
the city's power to make the condemnation; that the or-
dinance for widening the street was perfectly valid on its
face, and contained no reference to any other ordinance
or compact which would indicate any other purpose than
that apparent on its face; that the condemnation would
have to go on, and if afterwards the attempt was made
to enforce any illegal compact between the city and the
railroads by seizing the rest of the street, it would then
be time enough for his client to intervene; that he, wit-
ness, spoke to Mr. Winston several times about it; that
he had negotiations with him for the express purpose of
eliciting a plain declaration, if possible, of the purposes
of the city and the railroad company in this regard; that
Mr. Winston evidently suspected his purpose and never
gave any but an evasive answer; that he and Mr. Winston
together prepared the order of court in the condemnation
proceeding, and that neither from anything in the order
of the court nor from anything that was said by Mr. Win-
ston was he given to understand that the $22,500 that
was to be paid under the proceeding was to cover any-
thing other than the strip of ground sought to be added
to Stewart avenue for legitimate street purposes; that
Mr. Winston never intimated to him such a thing as that
the judgment was meant to cover anything that might

arise from the laying of additional tracks or the erection of a fence on the old Stewart avenue; that he never had any information that appellant was furnishing the money to pay for the land or conducting the condemnation proceedings until after the judgment in condemnation and just before the money was paid, when he learned the same from Mr. Loesch, attorney of appellant, who paid the same.   The bill in this case was filed on October 18, 1889, and the witness testified that the case was prosecuted with as much diligence as could be, in view of the delay caused by the appeal to this court and other necessary proceedings relating to it; that he was employed by Mr. Bond to guard his interests and that he strove to do so, and gave particular attention to the vicinity of this property with a view of watching, and preventing, if possible, any steps being taken by appellant toward consummating the deal between it and the city under the ordinance of 1887 by taking possession of any more of Stewart avenue than it already had done; that at the time this bill was filed no changes were made nor steps taken toward the removal of even the hydrants anywhere within at least a block or two of the Bond property, but he is not certain that water pipes, and perhaps hydrants, had not been removed in other portions of Stewart avenue; that at the time of bringing the bill no additional tracks had been laid and no fence constructed or begun. The testimony of this witness is not denied by anybody, and particularly that portion of it with reference to the transactions and conversations had pending the condemnation between him and Mr. Winston.   Mr. Winston having severed his relation with the railroad company, was not called and did not testify as a witness touching this transaction.   It appears by the record the money was paid for the condemnation of this land on January 31, 1889.

Upon the questions to which the above testimony related the master found as follows: "I find, as a matter of fact, that the attorney, Mr. Winston, who in said con-

demnation proceeding was nominally acting on behalf of the city but was really retained therein by this defendant, was fully informed, before the judgment was entered, of the complainant's objection to the proposed occupancy of the old bed of the street by the railroad and of complainant's purpose to resist such occupancy, if attempted, notwithstanding any award that might be made in such condemnation case; that the award of $22,500 was not meant to cover or affect any claim or right which might thereafter accrue to complainant in case of the occupancy of the bed of the old street by the railroad company; that said company was not misled by anything done or omitted by the complainant, either in paying the city for removing hydrants, water pipes, etc., from the bed of the old street, or incurring other obligations or any payment of said award, but that, on the contrary, the complainant was powerless to resist any of the said acts or to prevent the seizure of the said thirty-three foot strip so condemned, and I conclude that the complainant is not estopped by anything appearing in this record from obtaining the relief sought in his bill of complaint." The master also found "that during 1888 and 1889 the city of Chicago began the work of removing hydrants, sewers and water mains from the bed of the original Stewart avenue and replacing same in the thirty-three foot strip so condemned; that for the work thus done the city was reimbursed by the Pennsylvania Company, as provided in said ordinance of 1887. It does not appear that any of this work had been done in front of complainant's premises at the time this suit was brought, nor was it known to the complainant or his representative until some time afterwards that the Pennsylvania Company was in part paying the expenses of this work."

The cause had been referred to the master to state his conclusions of law and fact, and eighteen exceptions were taken to his findings and overruled by him, and renewed on the coming in of the report and again overruled

by the chancellor. By the decree it was "ordered that said master's report, and the findings and conclusions of law and fact therein, be and the same are hereby confirmed and approved."

From a careful examination of the evidence in this record we are impressed with the correctness of the findings of the master relative to the above matters as being according to the greater weight of the evidence. Taking the ordinance of 1887, which was the arrangement of terms between the city and appellant's lessor, by which the railroads were to become possessed of practically the entire old Stewart avenue, and taking the evidence and admissions of appellant, it is entirely apparent that if that compact is carried out this avenue will be but a street thirty-three feet in width, with ten feet taken off for a sidewalk, leaving twenty-three feet for the purpose of ordinary traffic, and that the public will be forever deprived of the use of any portion of the old avenue, except at the intersection of streets for street crossings. The ordinance of 1887 made no reference to any other ordinance then in existence or to be thereafter passed, and the condemnation ordinance of 1888 made no reference to any other ordinance theretofore passed. This latter ordinance, upon its face, was both legal and legitimate, and had there been no hidden purpose in its passage and the proceedings under it, it would have been greatly to the benefit of the people of the city, and particularly to the property holders along the avenue. In fact, upon its face it bore unusual evidence of being regarded by the city authorities and the council as being of great importance to the people of the city, as, contrary to the usual method, it was provided that it should be all paid for and improved by general taxation. With that addition to the avenue, had the railroad company's tracks remained as they were, the citizens would have then had a street of practically fifty-six feet in width, free from obstructions of every kind, save the presence

of the railroad to the west of the fifty-six feet of the street. Had this proceeding, as in the case of *Ligare.* v. *City of Chicago*, 139 Ill. 46, been begun and prosecuted with a frankness that would have given information to all persons of its ultimate object, it must have failed, as we think it ought to have failed. It was but an attempt to do indirectly what they must be held to have known they could not do directly. The streets of a city, and their care, maintenance and preservation, are entrusted by law to the municipality, but in trust for the benefit of the public, and the exclusive use thereof, or any portion thereof, is not to be diverted or appropriated to the benefit of any individual or corporation. While it is a legitimate use of the streets to allow steam railroads to traverse them, it is only legitimate to the extent that such use, being one of the modes of conveyance, shall not be to the exclusion of any other or all other modes of conveyance, and a court would be derelict in its duty that would allow two-thirds of a great avenue in the city to be absolutely turned over to a railroad company, where, under the law, a different result could be reached.

We do not think, under the facts shown in this case, that appellee was or ought to be estopped.

It is further urged, however, on authority of the *Ligare. case, supra*, that appellee should have made his defense at the condemnation proceedings, and should have shown the connection between the ordinances of 1887 and 1888, and the ulterior purpose of the railroad and the city, and thus saved the appellant the expenditure of such large sums of money. As we have said, there was no apparent connection between the two ordinances, as there was in the *Ligare case*. And besides, appellee was not objecting to the condemnation,—he was simply insisting upon his damages. Surely, it cannot be contended that in the condemnation proceedings for the widening of the avenue, which was the only improvement before the court, he could get his damages for lands before the time of their

being encroached upon by appellant. Nor do we enter-tain the opinion that appellant was innocently proceed-ing in that matter. It appeared willing to stake its money on a chance. We are bound to believe that it was fully advised as to the danger, and if, in taking the chance, it has expended moneys for which it will receive no benefit, we are not disposed to say that it was the fault of ap-pellee, or that appellee shall be deprived of his rights by reason thereof. Neither the ordinance of 1887 nor that of 1888 purported to dispose of or affect appellee's right to damages in the event any portion, or any further por-tion, of the east half of old Stewart avenue should be appropriated to railroad purposes, but, on the contrary, the ordinance of 1887 expressly provided that appellant should assume all such hazards, and should execute a bond to the city in the sum of $100,000 that it would meet them.

The ground upon which appellee based his right to re-lief was that he was the owner of the land to the center of old Stewart avenue, and had been for many years; that the fee to the street had never vested in the city, and that the appellant was about to take his land for rail-road purposes, by virtue of the ordinance of 1887, without compensation to him. It is conceded, and if it were not the record abundantly shows, these facts are well estab-lished. It is therefore unnecessary to pass upon the legality of the ordinance of 1887, as there is no conten-tion on the part of appellant that any right appellee had could be divested by that ordinance, the whole con-tention being that appellee was, at the time of filing the bill, estopped to assert his rights.

Upon the consideration of the whole case we think the decree of the circuit court and the judgment of the Ap-pellate Court were right and should be affirmed, and it is accordingly done.                    *Judgment affirmed.*