THE CHICAGO TERMINAL TRANSFER RAILROAD COMPANY
*v.*
THE CITY OF CHICAGO *et al.*

*Opinion filed February 18, 1903—Rehearing denied October 15, 1903.*

1. PRACTICE—*when motion to strike briefs from the files will be denied.*
A motion by one defendant in error, in a chancery proceeding, to
strike the brief of another defendant in error from the files upon
the ground that it is in aid of the plaintiff in error will be denied,
since identity of interest is not necessary as between defendants
in a chancery case.

2. MUNICIPAL CORPORATIONS—*city may limit time of grant to sub-
urban passenger railway.* A municipal corporation may limit to a
definite time its grant of the privilege to a suburban passenger
railway company to lay tracks in the public streets.

3. SAME—*additional rights presumed to be granted for the time limited
in original ordinance.* Additional rights granted by a municipal cor-
poration to a surburban passenger railway will be presumed to be
granted for the time fixed in the ordinance containing the original
grant of power unless a contrary intention clearly appears from
the later ordinance.

4. SAME—*enlarging powers does not show intention to extend time of
grant.* If the original ordinance granting the right to construct a
dummy railway to a corporation with limited powers fixes a defi-
nite period for the exercise of privileges granted, the confirm-
ing of the same privileges, by a later ordinance, to a corporation
having general railroad powers, and authorizing it, in addition, to
operate a suburban passenger railway, does not show an intention
to extend such period.

5. SAME—*when railroad company does not acquire perpetual easement
in street.* The laying of tracks by a railroad company in a street,
under the authority of an ordinance granting such privilege to the
company for a definite period, does not create a perpetual ease-
ment in the company to use the street.

6. SAME—*grant from public is construed strictly as against grantee.*
A grant from the public is to be construed most strictly against
the grantee, and in case of ambiguity nothing can be construed
in his favor.

7. SAME—*when acceptance of plat by city does not enlarge rights of rail-
road company.* The acceptance by municipal authorities of a plat
made for the purpose of widening a street does not confer greater
powers on a railroad than it already possessed over a strip marked
on the plat as the company's right of way, where such strip is
wholly in the street as originally laid out and there is no vacation
of any portion of the street by the municipal authorities.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

This was a bill for an injunction, filed in the circuit court of Cook county by the plaintiff in error, the Chicago Terminal Transfer Railroad Company, to restrain the defendant in error the city of Chicago from tearing up certain railroad tracks of the plaintiff in error.

April 26, 1879, the town of Cicero, in Cook county, passed an ordinance giving permission to Charles R. Vandercook, his heirs and assigns, to lay down, maintain and operate a single track railway, with necessary turn-outs, etc., over and along a certain route, beginning at the intersection of West Fortieth and Madison streets, thence on the west half of West Fortieth street to Randolph street, thence west on Randolph street to Robinson avenue, (now known as South Fifty-second avenue,) and thence on certain other streets in the town of Cicero, the engines used thereon to be dummy engines. The right to operate this railway was to extend to April 1, 1898, at which time the rights and privileges granted were to cease, unless further extended. Vandercook having sold and transferred his rights under the ordinance to the Chicago and Western Dummy Railway Company, on August 20, 1881, the town of Cicero passed another ordinance confirming the powers and privileges given and granted to Vandercook, to his assignee, except as therein specified. Section 2 gives permission to operate a single track railway, and modifies the route somewhat from the former ordinance. Section 3 fixes the standard gauge and the motive power, dummy engines, as before. Section 4 provides how the tracks shall be laid, and that the parts of streets so occupied shall be kept in as good repair and condition as are the other portions of the streets, and that the street crossings and sidewalks shall be planked. Section 5 provides that the company shall save and keep the town harmless for all loss, damage

and expenses on account of said road or the misconduct of its agents, etc. Section 6 fixes the fare at ten cents to all points within the limits of the town of Cicero. Section 7 provides that the right to operate said railroad shall extend to July 1, 1901, at which time the rights and privileges herein and hereby granted shall cease, unless the same are further extended. Section 8 reserves the right to regulate the speed, time and manner of running cars, and also the right to determine in what portions of the streets the tracks, etc., shall be laid, and to regulate and change the same. Section 9 provides that the rights and privileges granted shall at all times be subject to the police regulations, powers and ordinances of the town. Section 10 makes it the duty of the company to keep all culverts under its tracks free from obstructions, and to build such culverts as the authorities of the town may direct.

On October 5, 1887, the town of Cicero passed another ordinance in reference to this railroad. Section 1 provides that in addition to the rights, privileges and franchises heretofore conferred upon the Chicago and Western Dummy Railway Company by the ordinance of August 20, 1881, which rights, privileges and franchises are hereby vested in and confirmed to the Chicago, Harlem and Batavia Railway Company, the further right is hereby given to the last named company to maintain and operate a suburban passenger railway along the route prescribed in the aforesaid ordinance, and the right to connect its tracks with the tracks of the Chicago and Great Western Railroad Company at some convenient point between Fortieth and Forty-sixth streets, in the town of Cicero, and the right, for that purpose, to cross all necessary streets, alleys and public places, together with the right to straighten all existing curves, solely and only upon the terms, conditions, duties and other obligations hereinafter in this ordinance set forth, and not upon any other terms, conditions, duties or obligations. The com-

pany is further given the right to construct, maintain and operate a railroad with one or two tracks, with the necessary switches or turn-outs. Section 2 provides that locomotives shall use hard coal, and makes it the duty of the company to put in and keep and maintain in good order and repair all traveled street crossings now existing or hereafter to be made, said crossings to be the full width of the street, including sidewalks; to fill up ditches in the streets used by it, widen the roadway and to gravel the streets; to maintain safety gates or station flagmen at street crossings; to construct and keep in good order necessary ditches and drains along the right of way; to put in and keep in repair all culverts ordered upon street crossings; to honor commutation tickets for any guests or members of the family of the purchaser. The town reserves the right to open new streets across the railroad right of way, and to cross the same to put in new drains for a general drainage system. Whenever the company neglects or refuses to discharge any duties or obligations imposed upon it by the ordinance, a specific notice shall be served upon the company, calling upon it to discharge its duty, and if in default for thirty days the town shall have the right to do the necessary acts and charge the costs to the company. Section 3 provides that the rights and privileges herein granted are upon the express condition that the company will comply with all the terms, conditions and stipulations of this ordinance imposing terms, duties and obligations upon it, and upon its failure to do so after such default shall be determined by a court of competent jurisdiction, then the town may enter and oust the company of all rights herein granted, re-investing itself with all the rights it had before this ordinance was passed, and relegating the company to the condition that existed before rights hereunder were acquired. Section 4 provides that the rights and privileges herein conveyed shall cease and this ordinance is to become void and of no effect, unless

the company shall within one year after its passage (unavoidable delays excepted) run passenger trains regularly between the western limits of the town of Cicero and the general passenger depot of the Chicago and Great Western Railroad Company in the city of Chicago, over the route herein and in other ordinances described. This last ordinance was amended November 5, 1887, by giving the company the additional permission and authority to operate a railroad, with one or two tracks, in Fortieth street, from Randolph street to the south limits of the town.

Randolph street had theretofore been one hundred feet wide. September 28, 1888, a plat was filed for record in the office of the recorder of Cook county, endorsed "approved" by the town board of Cicero, certified to by the owners of the frontage on Randolph street, widening the street from West Fortieth street to Hyman avenue from thirty to eighty feet at different portions, by dedication by the property owners of the additional strip. A strip twenty-eight feet wide, running the entire length of the street and in the middle of the old street, was marked "C. H. & B. Right of Way." Prior to 1889 the center line of West Fortieth street was the east line of the town of Cicero and the entire line of railroad was within the limits of the town of Cicero. Portions of this territory have at different times been annexed to the city of Chicago, so that the part of the line in controversy is now within the limits of the city of Chicago.

A double track was laid in Randolph street, and connected by a curve over private property with a single track in West Fortieth street, (now called South Fortieth avenue,) and connecting with the Chicago and Great Western tracks at about Taylor street. After the tracks had been laid, the Chicago, Harlem and Batavia Railway Company conveyed its property to the Chicago and Northern Pacific Railroad Company, which company also owned the tracks of the Chicago and Great Western Rail-

road Company. The Pacific Railroad Company mortgaged all of its property to the Farmers' Loan and Trust Company. The trust company filed a bill in the Federal circuit court to foreclose its mortgage, and thereunder A. L. Hopkins was appointed receiver by the court in 1895. On May 19, 1896, the receiver, by order of the court, leased to the Suburban Railroad Company, one of the defendants in error, the railroad known as the Chicago, Harlem and Batavia railway for a period of fifty years, subject to the performance of all the obligations of the owner of the said railroad to the municipalities through which it extended. The lessee, the Suburban Railroad Company, mortgaged all the properties then owned or thereafter to be acquired by it to the Chicago Title and Trust Company by deed of trust dated March 2, 1896, recorded December 14, 1896, to secure payment of $3,000,000 in bonds to be issued. June 20, 1896, a decree foreclosing the mortgage of the Pacific company was entered, ordering the sale of all its properties, subject to all leases made by the receiver under order of court. The railroad was thereupon sold and became the property of the Chicago Terminal Transfer Railroad Company, plaintiff in error, and possession was delivered July 1, 1897, which acts were approved by the court.

Before 1895 only a single track had been laid on the west half of South Fortieth avenue, but that year the receiver laid a second track west of the original track, and the city of Chicago threatened to tear up the track. The receiver then filed his intervening petition in the foreclosure suit in the Federal court, praying that the city be enjoined from interfering with the track laid. The city answered, denying the validity of the conveyance to the Pacific company, and setting up alleged violations of the ordinances granting the rights to the railroad companies, and that the construction of two tracks in the west half of the street would be an appropriation of the entire street, to the exclusion of the public. The

Federal court entered a decree June 17, 1897, in which it declared the ordinances of the town of Cicero legal and valid, and that they conferred the right to lay down and operate one or two tracks on the west half of Fortieth street, and perpetually enjoined the city from tearing up or interfering with the tracks or their operation "for and during the time and period of the said ordinances." It also ordered the receiver to pave the street. This not having been done, another order was entered in 1899, ordering the street paved and the west railroad track constructed, as provided in the former order, on or before June 1, 1899.

May 22, 1899, the defendant in error the Suburban company filed its intervening petition in the foreclosure suit, making the Terminal company and the city of Chicago parties, alleging all the matters of record hereinbefore set out in regard to the laying of tracks on South Fortieth avenue; that the city, in 1895, had authorized the Ogden Street Railway Company to lay down and operate.a double track in the east half of the same street, thus making four tracks in the street; that the Suburban company had entered into an arrangement with the Chicago Consolidated Traction Company, the successor of the Ogden company, by which each company surrendered its right to lay down a double track in said street and they agreed to operate a double track jointly, and that this compromise agreement was conditioned upon its approval by the court and the passage of an ordinance authorizing it. The defendants answered the same, admitting all the allegations of the petitioner, and an order was entered providing for the removal of the west track on the west half of Fortieth street and the dissolution of the injunction against the city, provided the city council should pass the required ordinance. No such ordinance was passed.

After the construction of the tracks by the Chicago, Harlem and Batavia Railway Company, passenger trains

were run over them and the tracks of the Chicago and Great Western company to the Grand Central passenger station in Chicago, as contemplated by the ordinance, until a short time after the line passed into the possession of the Suburban company. This company secured the passage of an ordinance March 28, 1898, by the city of Chicago, authorizing it to erect poles on South Fortieth avenue, between Madison street and Randolph street, for the purpose of operating its railway by electricity, conditioned that the company should give its patrons at least hourly service, and that it pave the west half of South Fortieth avenue from Randolph street to Taylor street. The electric trolley line was instituted, since which time cars have run on Fortieth and Randolph streets at hourly intervals, but the running of cars over the Great Western tracks and to the Grand Central station has been abandoned. On December 19, 1898, the town of Cicero passed an ordinance repealing section 4 of the ordinance of October 5, 1887, requiring the operation of trains over the Great Western tracks to the central station. At this time the streets on which the track in controversy here is located,—that is, South Fortieth avenue, and Randolph street between South Fortieth and South Fifty-second avenues,—had become a part of the city of Chicago and were no longer under the jurisdiction of the town of Cicero.

March 18, 1902, the city of Chicago passed an ordinance reciting in the preamble the passage of the ordinances of the town of Cicero of August 20, 1881, October 5, 1887, and November 5, 1887, and that all the rights and privileges granted thereby expired July 1, 1901; that the railway company had discontinued running passenger trains between the western limits of the town of Cicero and the general passenger station of the Great Western company; that it had failed to keep the street crossings and streets in good condition, as required by ordinance, and that the tracks had become a public nuisance. Sec-

tion 1 declared all the rights and privileges granted by the said ordinances forfeited and annulled, and repealed the ordinances in so far as they granted any rights to maintain or operate street railway tracks upon any portion of any street which is now within the limits of the city of Chicago.   Section 2 declared the tracks a public nuisance.   Section 3 ordered them removed by the company within twenty days, and in the event of its failure to comply with the order the commissioner of public works was ordered to do so.   Section 4 directed the corporation counsel to institute such legal proceedings as he might deem proper.  Thereupon plaintiff in error filed its bill for an injunction, setting up many of the foregoing facts, and claiming a reversionary interest in the railroad, subject to the lease.   The bill further alleged that the complainant had applied to the Suburban company to perform the conditions required to preserve the franchises and licenses to maintain its railroad in the street, but that the Suburban company claimed that it had done all things necessary; that the Suburban company was insolvent and liable to be placed in the hands of a receiver at any time, and that the complainant was in danger of having the lease canceled and thrown back on its hands.   The bill made the Suburban company a party, and prayed for an injunction to restrain the city from tearing up the tracks. The Suburban company answered and claimed that the Chicago, Harlem and Batavia Railway Company, its successors and assigns, were not, by the ordinance of October 5, 1887, obliged to operate passenger trains between the town of Cicero and the general passenger station of the Great Western company, but that the true construction of the ordinance only required it to have passenger trains regularly in operation between those points within one year from the passage of the ordinance, and that there was now no public necessity or demand for the running of trains between those points. The answer further alleged that by virtue of the

decree of the Federal court authorizing the making of the lease to it, the Chicago, Harlem and Batavia line was separated from the rest of the lines of the Pacific railroad company, and the Suburban company had no right and was not legally bound to operate its trains eastward beyond Fortieth street, and that the decree was a full protection to it and release of any obligation, if there had been any, to so operate its trains. The answer also alleged the performance of all things required by the ordinances. The city of Chicago answered the bill, alleging that no trains or cars were running into the Central Passenger station, as prescribed by the ordinance; that the complainant had allowed the streets and crossings to become out of repair and impassable, and that the right to operate the road on Fortieth and Randolph streets had expired July 1, 1901. The city also filed its cross-bill setting up the same matters, also the ordinance of 1902, and praying for a forfeiture of the rights granted to the Chicago, Harlem and Batavia Railway Company, and that the tracks in the streets mentioned be decreed a nuisance and ordered removed. The Suburban company answered the cross-bill, denying all its allegations and setting up the same matters alleged in its answer to the original bill; alleging that it has kept all street crossings in good repair, and that it has never been served with any notice to repair, as provided by the ordinance.

On the hearing the chancellor, July 3, 1902, entered a decree dismissing the original bill for want of equity and found the equities with the cross-complainant; that the right of the railroad companies to maintain and operate any tracks on the west side of South Fortieth avenue between Taylor street and Randolph street, and upon Randolph street from South Fortieth avenue to South Fifty-second avenue, in the city of Chicago, had been forfeited and had ceased and determined, and ordered the tracks removed.

JESSE B. BARTON, for plaintiff in error.

CHARLES M. WALKER, and CLARENCE N. GOODWIN, for defendant in error the City of Chicago.

CLARENCE A. KNIGHT, and WILLIAM G. ADAMS, for defendant in error the Surburban Railroad Company.

Mr. JUSTICE CARTER delivered the opinion of the court:

The city of Chicago, one of the defendants in error, has filed its motion in this court to strike the briefs of its co-defendant in error, the Suburban Railroad Company, from the files, on the ground that its briefs are not in defense of the decree but are in aid of the plaintiff in error, and therefore not proper to be filed at this time. By the general rules of equity pleading all persons who are materially interested in the event of the suit or in the subject matter should be made parties, either as complainants or as defendants. It is wholly immaterial whether the interests of the several defendants are or are not in conflict with each other. (*Parsons* v. *Lyman,* 4 Blatchf. 432.) It follows, that each defendant may pursue that course in the litigation which he shall deem for his best interest. The motion is denied.

The real question at issue in this case is the interpretation of the ordinances of the town of Cicero passed August 20, 1881, and October 5, 1887. The railroad companies contend that the latter ordinance granted a perpetual right to the railroad company to lay, maintain and operate its railroad in the streets of the town, while the city of Chicago contends that the ordinance did not have this effect.

The first ordinance passed by the town of Cicero in 1879 granted the right to construct and operate a dummy railway in certain named streets of the town of Cicero to one Vandercook, and expressly limited the right to operate said railway to April 1, 1898, at which time the

right was to cease unless further extended. The next ordinance, passed August 20, 1881, confirmed the powers and privileges granted to Vandercook to the Chicago and Western Dummy Railway Company, and limited the right to operate said railroad to July 1, 1901, at which time the right and privileges should cease unless further extended. This ordinance made several changes from the first ordinance, principally in the route and the fare to be charged. On October 5, 1887, the town again passed an ordinance in relation to this street railway, which ordained "that *in addition* to the rights, privileges and franchises heretofore conferred upon the Chicago and Western. Dummy Railway Company by an ordinance passed August 20, 1881, entitled, * * * which rights, privileges and franchises are hereby vested in and confirmed to the Chicago, Harlem and Batavia Railway Company, its successors and assigns, the *further right* is hereby given to said Chicago, Harlem and Batavia Railway Company," etc. If this language means anything, it means that the rights granted in this ordinance are additional and further rights granted to the railway company not granted in the former ordinance, which ordinance is expressly named and identified by its title and date. These additional and further rights are granted "solely and only upon the terms, conditions, duties and obligations hereinafter in this ordinance set forth, and not upon any other terms, conditions, duties or obligations." Section 3 provides that the rights and privileges *herein* granted are upon the express condition that it shall comply with all the terms, conditions and stipulations of this ordinance imposing terms, duties or obligations upon it, and provides a method of ouster of the rights and privileges *herein* granted, thereby "relegating said company to the condition that existed before rights hereunder were acquired." In section 4 it is provided that trains shall be running within a certain time "over the route herein and in other ordinances described."

While this ordinance grants a number of additional rights to the railway company, such as the right to operate a suburban passenger railway over the route prescribed in the ordinance of 1881, to lay a double track, to connect its tracks with the tracks of the Chicago and Great Western railroad and to use locomotives burning hard coal, it is also more specific and particular in guarding the rights of the town of Cicero, imposing additional burdens on the company, and justifying such additional burdens by the additional rights granted. A large number of the provisions of the former ordinance of 1881 are in nowise modified or altered, such as those relating to the gauge, the method of laying the tracks in the street, the charge for fare, the right reserved by the town to designate in what portion of the street the tracks shall be laid, to regulate the speed and time and manner of running cars, etc. Nothing is expressly repealed in the new ordinance, and it in no place professes to repeal or supersede the prescribed limit of time fixed by the old ordinance, but only to confer additional rights and privileges. It is difficult to see how language could make it any plainer that the ordinance of 1881 is not superseded, but only amended or added to, by the ordinance of 1887. All the additional rights granted are made subject to the additional burdens imposed, and it is expressly provided that a failure to observe these duties shall relegate the company to the condition that existed before these rights were granted,—that is, to its rights under the ordinance of 1881. As there is nothing said about the time for which these additional rights are granted, they must be held to have been granted for the time specified in the original ordinance, unless it clearly appears from the later ordinance that such was not the intention. The mere fact that the first ordinance granted permission to operate a dummy railway to a corporation organized with more limited powers, and the later ordinance permission to operate a suburban passenger rail-

way to a company with general railroad powers, could not manifest such intention. No reason is perceived why a municipality should not limit its grant to a suburban passenger railway to a definite time, if it sees fit to do so. And this is the chief difference between the two grants. The right to lay a double track only enlarged the facilities of the road. The main object of the ordinance seemed to be to secure the connection with the Great Western railroad and through trains to its passenger station in Chicago, and it granted additional right of way for this purpose. It is conceded that these trains have been abandoned.

Nor can we assent to the doctrine propounded by the learned counsel for the plaintiff in error that a railroad company, by laying tracks in a street under authority from a municipality, acquires a *perpetual* easement in the street. If the grant were perpetual this might follow, but to say that a grant for a limited time conferred a perpetual easement would be a contradiction of terms. In *City of Chicago* v. *Baer*, 41 Ill. 306, this court said (p. 312): "The railway company has not become the owner of any portion of these streets in fee, but it has certainly, through its charter from the legislature and its contract with the city, acquired a property in them of the most valuable character, * * * and capable, like other property, of being sold and conveyed. The city council has made a contract with the company, by which it has granted to the latter what is substantially a leasehold interest in a portion of this street for a term, by the original ordinance, of twenty-five years. * * * It is wholly unnecessary to define, for the purposes of this case, what is the precise extent or nature of its property." It is true, this case was partially overruled in *Parmelee* v. *City of Chicago*, 60 Ill. 267, but upon another point, and we there said: "To that extent only are the grounds taken in the *Baer case* affected by the decision of

the Supreme Court of the United States, and we adhere to them still in all other respects."

It is conceded by counsel that the doctrine is well established that a grant from the public is to be construed most strictly against the grantee, and in case of ambiguity nothing can be presumed in favor of the grantee. If there is any doubt as to the time for which these rights were granted, it arises from the fact that the ordinance of 1887 expressly purports to grant rights additional to those granted by the ordinance of 1881, and then fails to ordain anything in regard to the time limited in the old ordinance, which contains the express provision that the rights granted shall extend to July 1, 1901, "at which time they shall cease, unless the same are further extended." The doubt, if any there be, must be resolved in favor of the public. The time limited for the exercise of the rights and privileges granted to the predecessor of plaintiff in error having expired, the action of the city council was proper and the decree of the court was right.

In this view of the question it will not be necessary to consider whether the railroad company has violated the provisions of the ordinance, so as to give the city power to declare a forfeiture on those grounds.

A suggestion has been made in the briefs and arguments in this court that a necessary party has been omitted. There is no assignment of error raising the question. The complainant in the bill did not make the alleged mortgagee of the lessee a party, nor did the city do so in its cross-bill. While the question of the lack of necessary parties can be raised on appeal though not raised in the court below, (*Gerard* v. *Bates,* 124 Ill. 150,) still, as the record is presented we do not feel called upon to determine whether the omitted mortgagee was a necessary party or not.

At the close of his argument counsel for plaintiff in error claims that the court erred in decreeing a forfeiture of the rights of the railroad company in Randolph

street, because, as he says, by virtue of the plat widening Randolph street the railroad company has secured the same interest in the twenty-eight foot strip in the center of the street marked "C. H. & B. Right of Way," and extending from Forty-eighth street to a point near Fortieth street, as though it had condemned it. The certificate of the platters states that they "have caused to be surveyed and platted a widening of Randolph street between the above named points, so that Randolph street shall be one hundred and sixty feet wide between," etc. The report of the committee of the board of trustees of the town of Cicero, reporting on the plat, recommended the approval of the same and that the land be accepted for purposes named and designated on the plat, which report was adopted. The twenty-eight foot strip in the center of the street was in the original street as laid out years ago. The owners of the abutting property in their certificate state that they have caused to be surveyed and platted a *widening* of the street, so that it shall be one hundred and sixty feet wide. There has been no vacating of any portion of the street by the town authorities. The report that was adopted recommended the acceptance of the land for purposes named and designated on the plat. The only land that there was to be accepted was the additional strip on each side of the old street, and this additional strip was dedicated solely for the widening of the street. There was no implied vacation of the twenty-eight foot strip, and there could be no dedication of it to the railroad company. The previous rights of the company in this strip were not in any way enlarged by the acceptance of the plat by the town.

Finding no error the decree will be affirmed.

*Decree affirmed.*