(No. 25704.—

GENEVIEVE B. SUNDSTROM, Appellee, *vs.* THE VILLAGE OF OAK PARK *et al.* Appellants.

*Opinion filed October 11, 1940—Rehearing denied Dec. 10, 1940.*

ROBERT C. BARNEY, and GEORGE A. MILLER, (ROBERT L. ELLIOTT, JR., of counsel,) for appellants.

ENOCH J. PRICE, and OWEN N. PRICE, (LAWRENCE C. MILLS, of counsel,) for appellee.

Mr. CHIEF JUSTICE JONES delivered the opinion of the court:

The village of Oak Park and the park district of Oak Park have appealed from a decree of the circuit court of Cook county finding title in fee simple to certain premises in appellee and ordering registration thereof in her name, under an act concerning land titles, commonly known as the Torrens law, (Ill. Rev. Stat. 1939, chap. 30, par. 45, *et seq.*) subject to general taxes for 1938 and 1939, an ordinance of the village establishing charges for water and sewer service, and an easement of the general public in a cement sidewalk approximately five feet wide across the south side of the premises.

The property is lot 28, except the south one foot and seven inches thereof, in block 1 in Central Re-subdivision of certain lots in Denton's Subdivision of the west half of the southwest quarter of section 7, town 39 north, range 13, east of the third P. M., and is located at the southeast corner of the intersection of Wisconsin avenue and Randolph street, (formerly Division street,) in the village. The lot is 178 feet long, east and west, and 50 feet wide, north and south.

Appellants and appellee each claim title to the premises. The common source of title is from the Chicago, Harlem and Batavia Railway Company, which owned lot 28 and 50 feet off the north end of lots 29 and 30, across the alley east of lot 28. The appellants claim title through an alleged dedication of the tracts by the railroad company to the town of Cicero (predecessor of the village) by a plat recorded July 5, 1888. Appellee claims through *mesne* conveyances

from the common source. She contends the plat is insufficient and invalid as a dedication. Appellants contend appellee does not show a connected chain of title in fee simple; that they have occupied and improved the premises since 1888 and that appellee is estopped by *laches*.

At the time the plat was made, the railroad company had a double track along the center of Division (now Randolph) street, which was 66 feet wide. The plat shows "depot grounds," colored red, 35 feet wide along the south line of the south track extending east 248 feet from Wisconsin avenue to a point opposite the east line of lot 29. It embraced the street south of the tracks and overlapped the north 7 feet of lots 28 and 29. Lot 28 and the north 50 feet of lots 29 and 30, except the overlapping 7 feet, are shown as a part of Division street along the south side and east end of the depot grounds. The plat recites that it was made "upon condition that the town of Cicero shall, by its acceptance of this plat * * * agree to ensure to said company the permanent right to use for depot grounds that portion of Division street marked red upon this plat, and shall also by said acceptance agree to forever save and keep harmless said company from any and all damages that may result from the change in said Division street." The plat shows acceptance "upon the terms and conditions above set forth." A station was erected on the "depot grounds" and remained there until the spring of 1904. In February, 1903, we held, in *Chicago Terminal Railroad Co. v. City of Chicago,* 203 Ill. 576, that all rights to operate the railroad expired on July 1, 1901. In January, 1904, the village passed an ordinance requiring the removal of the station, tracks, and appurtenances, which was accordingly done. In 1907, the street, as originally platted, was paved and curbed like other 66-foot streets in the village. The concrete sidewalk along the south side of lot 28 was constructed by the adjoining property owners some time prior to 1910 and has ever since been used by the general

public. The village made no improvements on the lot. From 1911 to 1924 it removed rubbish as it accumulated, cut the grass and weeds and trimmed and sprayed the trees. In 1924, the park district assumed control of the lot, planted some shrubbery and flower beds and installed park benches. A crushed limestone winding walk was laid about 1933, and a wire mesh fence was built along the west and north side about 1937. No one ever objected to any of these activities. A quitclaim deed from the village to the park district, made in 1924, describes a strip of ground with the south line of Randolph street as the south boundary. It does not purport on its face to include any part of lot 28.

Appellants claim it was incumbent on appellee to allege and prove the premises were vacant and unoccupied or that they were occupied by appellee or some one claiming under her. The applicable statute makes no such requirement. Section 11 of the Torrens law (par. 55) requires only that the application shall set forth, substantially: "Whether the land is occupied or unoccupied, and, if occupied by any other person than the applicant, the name and postoffice address of each occupant, and what estate or interest he has or claims in the land." The application states the land is occupied by the park district, and otherwise complies with the act. In *Draper* v. *Tope*, 348 Ill. 534, relied upon by appellants, the applicants alleged they were in possession of the premises, but the proofs showed possession of only a part thereof. Registration was denied. The expression in that case that "An applicant for registration of land title, to be entitled to a decree in his favor, must show that the premises * * * are unoccupied or that they are in possession of the applicant or of someone claiming under him" was meant to be applied only to the factual situation in that case, and not to all applications under the act. The lack of proof to meet the allegation of the application was the basis of the decision, as we later noted in *Tope* v. *Tope*, 370 Ill. 187. The same principle was involved in *Jackson* v.

*Glos,* 243 Ill. 280, *Brooke* v. *Glos,* id. 392, and *Harty* v. *Glos,* 272 Ill. 395, cited in *Draper* v. *Tope, supra.* To uphold the contention of appellants would nullify the express provisions of the statute.

The streets of a municipality, and their care, maintenance and preservation, are committed by law to it in trust for the benefit of the public, and the exclusive use of a street, or any portion of it, cannot be diverted or appropriated to the benefit of any individual or corporation. While it is a legitimate use of the streets to allow railroads to traverse them, it is only legitimate to the extent that such use, being one of he modes of conveyance, shall not be to the exclusion of any or all other modes of conveyance. (*Pennsylvania Co.* v. *Bond,* 202 Ill. 95.) A municipality has no power to authorize the use of a street so as to exclude other uses. (*Russell* v. *Chicago and Milwaukee Electric Railway Co.* 205 Ill. 155; *Ligare* v. *City of Chicago,* 139 id. 46; *Chicago Dock and Canal Co.* v. *Garrity,* 115 id. 155.) Poles and wires of a railroad company, used in the operation of rolling stock, and pillars of an elevated railroad are a necessary part of the road, as much so as the rails and other parts of the track. The granting of the right to use streets for such tracks and appurtenances is within the powers of a municipality because it aids and facilitates travel and transportation on the street along with other modes of travel. (*Doane* v. *Lake Street Elevated Railroad Co.* 165 Ill. 510; *Chicago, Burlington and Quincy Railroad Co.* v. *West Chicago Street Railroad Co.* 156 id. 255.) While a station building and grounds facilitate the business of a railroad, such a use of the street necessarily excludes other modes of travel on that portion of the street. The municipality had no power to authorize or permit such occupancy. (*Pennsylvania Co.* v. *Bond, supra.*) Whether lot 28 was dedicated for street purposes did not change the situation so as to give the railroad a right to such occupancy. Appellants do not claim that the portion of the

street so occupied was ever vacated pursuant to the method prescribed by statute, and when the station was removed the village reclaimed and improved the strip as part of the street. The acceptance of the plat did not confer any greater rights on the railroad company in the strip colored red than it already had. *Chicago Terminal Railroad Co.* v. *City of Chicago, supra.*

The statute relating to plats in effect at the time of the alleged dedication requires a survey and certificate by the county surveyor or some other competent surveyor. (Ill. Stat. 1889, chap. 109, pars. 1, 2.) The certificate on the plat in controversy shows the survey was made by Willis S. Jones, without any showing whether he was a surveyor, and there is no such showing in the record. If the statute is not fully complied with, the plat can have no effect as a statutory dedication. (*Ryerson* v. *City of Chicago,* 247 Ill. 185; *Nelson* v. *Randolph,* 222 id. 531; McQuillan on Municipal Corporations, (2d ed.) p. 536.) There being nothing to show the plat complies with the statute, it does not qualify as a statutory dedication.

In order to constitute a dedication at common law, it is essential that there be an intention on the part of the proprietor of the land to donate the same to public use. The vital, controlling element in a common law dedication is the *animus donandi,* (an intent to donate.) (*City of Chicago* v. *Borden,* 190 Ill. 430; *City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 id. 561.) "Donation" is defined in law as: "The act or contract by which a person voluntarily transfers the title to a thing of which he is the owner, from himself to another, without any consideration, as a free gift." (Webster's Unabridged Dict. Bouvier's Law Dict.) The language of the condition expressed on the plat shows there was no intention to donate the land to the public use. On the contrary, it shows an attempt to trade the land for the permanent exclusive use

of a part of the street. It, therefore, was not a common law dedication.

An owner, making a voluntary dedication of his property to public use, may annex such conditions and limitations to his grant as are not inconsistent with the dedication and will not defeat the operation of the grant. (*People's Gas Light and Coke Co.* v. *City of Chicago,* 255 Ill. 612.) In that case the donor made a statutory plat of lots, with 16-foot alleys. The plat contained one eight-foot strip designated as "eight feet for half alley." We held the designation was conditional, as contemplating the other half of the alley would be provided, and, the condition not being fulfilled, the subsequent owner by *mesne* conveyances from the donor was not estopped to deny the dedication of the strip. The condition in that case was valid. It operated because it was not fulfilled. The condition in the case at bar was void. It could not legally be performed by the town. Obviously the railroad would not have attempted the trade without the condition. Attaching such a void condition defeated the operation of the grant, the same as the failure to perform a valid condition. This left the title to lot 28 and the north 50 feet of lots 29 and 30 in the railroad company.

In appellee's chain of title is a deed dated October 4, 1935, by the Chicago Title and Trust Company, as trustee, to Herbert R. Preston, James M. Sheean and others. The deed in trust to the grantor, dated November 7, 1910, pursuant to a trust agreement therein mentioned, grants authority to convey "at any time or times hereafter and before the end of 21 years from the date hereof." The record of the trust agreement or its provisions was not proved. Appellants claim that in order to prove that the conveyance, made after the twenty-one year period, was valid, it was necessary to offer the trust agreement in evidence to show the conveyance by the title and trust company was author-

ized by it and did not violate the rule against perpetuities. Another deed by Helen Cross Preston conveys her interest as "the widow and sole and only devisee of Herbert R. Preston, deceased." A *hiatus* is claimed because the abstract shows no proceedings were of record in the matter of the decedent's estate. Under section 18 of the Torrens law, *supra,* abstracts of title or certified copies thereof are admissible in evidence and may constitute *prima facie* evidence of title, subject to be controverted by other competent proofs. When appellee's abstract was offered in evidence before the examiner the only objection interposed by appellants was as to the sufficiency of the certificate which is not urged here. The examiner's report finds the abstract shows the record title in appellee. Appellant the village of Oak Park objected to the report on the ground that "the findings that the abstracts of title introduced in evidence show the record title to the premises to be in Genevieve B. Sundstrom is unsupported by the evidence." This is the only way the question of appellee's title was raised in the trial court. The abstract made a *prima facie* case and no attempt to controvert it was made, except by the claim of a dedication which was void. *Glos* v. *Cessna,* 207 Ill. 69, cited by appellants, has no application here. The abstracts in that case were not considered by the examiner or the court, and the only *prima facie* showing of title in appellant was a deed to her without any attempt to show title in her grantor. It is a familiar rule that where objections to the introduction of testimony are of a character that, if pointed out at the time, they can be obviated, it is the duty of the party objecting to state the grounds of the objections, and if he does not do so he cannot raise the objections for the first time in a court of review. (*Bjork* v. *Glos,* 256 Ill. 447.) Under this rule we will not disturb the conclusion of the chancellor finding the fee simple title in appellee.

The claim that appellee is estopped from asserting title because of a failure by her and her predecessors to claim

ownership until she filed application for registration, and because the park district expended over $3000 in improving the premises is equally untenable. The record is barren of any claim of ownership by appellants save by the activities mentioned herein. The use of vacant and unoccupied land by the public is presumed to be permissive and not adverse. The user must be under claim of right in the public and not by mere acquiescence on the part of the owner. (*Gietl* v. *Smith,* 320 Ill. 467.) Neither of appellants has ever made any lasting and valuable improvements on the property. The putting down of a crushed limestone walk, putting up a wire fence, planting shrubbery and mowing the grass are not permanent improvements. The evidence does not show any valid reason for preventing appellee from asserting her title against the claim of appellants. *Manson* v. *Berkman,* 356 Ill. 20.

There was no error in excluding testimony to show the premises were not included in the return of a successor railroad for taxes of the year 1907, and were not thereafter carried on the tax rolls. They were marked "exempt" at the suggestion of an employee of the county clerk's office, and there was no offer to show it was done at the instance, or with the knowledge, of any of the owners or of either of appellants. The testimony, if admitted, could in no way tend to validate the attempted void trade or to convert it into a dedication. While, under a valid transaction, it might be admissible to show the premises were regarded as public property, that situation is not present here. The law does not demand the forfeiture of appellee's title merely because she or her predecessors did not cause it to be listed for taxation. *Poole* v. *City of Lake Forest,* 238 Ill. 305.

The decree of the circuit court is affirmed.

*Decree affirmed.*