Sanitary District of Chicago v. Joliet Pioneer Stone Co.

1. APPELLATE COURT PRACTICE—*Points Not Argued Are Waived.*— A failure to cite authorities or advance any argument in support of a position taken in a brief, is a waiver of the point.

2. INSTRUCTIONS—*Giving Undue Prominence to Certain Portions of the Proof.*—An instruction which singles out and gives undue prominence to certain portions of the proof is properly refused.

3. SAME—*Party May Not Complain of Opponent's Instructions When the Same Defects Occur in His Own.*—Where a party has requested the court to adopt a certain rule to guide the jury, he can not complain if the court gives the same rule in instructions requested by the other party.

4. EVIDENCE—*Pleadings in Another Case Pending in Another Court Inadmissible.*—A transcript of the files and records of the Supreme Court of the United States, containing a bill in a pending case, together with an opinion of the court upon a demurrer to it, but containing no final decree in the case, is inadmissible in evidence.

Trespass on the Case, for damages to the land by flooding. Appeal from the Circuit Court of Will County; the Hon. ROBERT W. HILSCHER, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed June 8, 1903.

JAMES TODD, P. C. HALEY and E. MEERS, attorneys for appellant; JOHN S. RUNNELLS, of counsel.

CHARLES A. MUNROE, attorney for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court. This was a suit brought by the Joliet Pioneer Stone Company against the Sanitary District of Chicago to recover damages for the overflow and destruction of the beneficial use of certain of plaintiff's lands by water discharged into the Desplaines river from defendant's drainage channel. To a declaration consisting of original and additional counts defendant pleaded the general issue. There was a jury trial and a verdict and a judgment for plaintiff for $3,000, from which judgment defendant prosecutes this appeal.

The argument of defendant is mainly devoted to the question whether the damages awarded are excessive. The

284    APPELLATE COURTS OF ILLINOIS.

VOL. 109.] Sanitary Dist. of Chicago v. Joliet Pioneer Stone Co.

tract of land described in the declaration contains about fifty acres along the west bank of the Desplaines river a short distance below the city of Joliet, and it is alleged that twenty-nine acres of this were destroyed by the waters discharged into the river from the Sanitary District channel, and the proof tended to show a little over twenty-six acres were so destroyed. The main channel of the Sanitary District connects with the Chicago river in Chicago and ends at the controlling works near Lockport, some seven miles above plaintiff's land. At the lower portion of the main channel of the Sanitary District it is 160 feet wide at the bottom and 162 feet at the top, and widens into a large basin just above the controlling works. The average depth of the water at the controlling works is twenty-seven feet. The water is discharged from the basin into the river through seven lifting gates having an opening of thirty-two feet each, and over a bear-trap dam having an opening 160 feet wide with an oscillation of seventeen feet. The average discharge from the channel into the river is from 200,000 to 250,000 cubic feet per minute, with a velocity of about a mile and a quarter per hour, but it sometimes is much greater and has exceeded 300,000 cubic feet per minute. The lower part of the main channel has a capacity of 600,000 cubic feet per minute at a velocity of a mile and nine-tenths per hour. The lower part of the channel is cut through solid rock for several miles. The description of the channel by the chief engineer of the Sanitary District shows this is designed to be a permanent improvement, and such is the public history of the work. The waters of the Chicago river were first discharged, through the channel into the Desplaines river on January 17, 1900.

The proofs show plaintiff's land, now overflowed by these waters, is a deep deposit of rich black soil, upon which for many years unusually large crops of agricultural products have been raised. Defendant produced witnesses who testified that prior to 1900 it was so often overflowed by the freshets of the Desplaines river that it could not be relied

upon to produce crops, and that because thereof the value of the land before 1900 was slight. Plaintiff produced witnesses more familiar with the land and who had worked or controlled it during the last thirty or forty years, who showed that during that period of time prior to 1900 this land had been overflowed at a time injurious to crops only two or three seasons, and that the other overflows were for brief periods only, and were not during the season of crops, and that they tended to enrich the land by alluvial deposits. It is clear that since the waters of the Sanitary District have been turned into the river about twenty-six acres of this land is habitually overflowed and rendered practically useless. Plaintiff's witnesses estimated the value of this land before the Sanitary District waters were turned into the river at from $150 to $300 per acre, and its value since at from nothing to $10 per acre. Defendant's witnesses valued the land at from $30 to $50 per acre before 1900, and its depreciation in value by the overflow of the Sanitary District at one-third to two-thirds of that value. As a whole, plaintiff's witnesses were more familiar with the land than those who testified for defendant. If about twenty-six acres were practically destroyed, the verdict follows almost the lowest estimate made by plaintiff's witnesses. We find nothing in the record which would justify us in disturbing the conclusion the jury have reached upon the conflicting testimony.

In cross-examining D. K. Gise, who testified for defendant as to the value of the land, he was asked whether, if it should turn out that this land had been rented for four years for $16 per acre, and that lands across the road no better than this land had been sold at $265 per acre, this would change his opinion as to the value of the land here involved. The court sustained defendant's objection to the question which supposed the rental, but overruled the objection to the question as to the effect which a sale of adjacent land at the price named would have on his opinion. This witness was not told the land had been so rented or sold. These were mere tests applied to the witness by the

286      APPELLATE COURTS OF ILLINOIS.

VOL. 109.] Sanitary Dist. of Chicago v. Joliet Pioneer Stone Co.

cross-examiner to ascertain how positive he was in his views, and upon what conditions and circumstance his estimates were based. Gise answered that such a sale would change his opinion. We fail to see that defendant was harmed by that answer. It is said in argument that like cross-questions were propounded to other witnesses, but we are not given their names nor the pages in the abstract where such cross-examinations are found, and we do not consider it our duty to search for them, but as to them we consider the point waived.

Defendant offered in evidence a transcript of the files and records of the Supreme Court of the United States in a cause entitled The State of Missouri against The State of Illinois and the Sanitary District of Chicago. The court sustained an objection thereto. It is said this ruling was erroneous. This transcript contains a bill in equity filed by the State of Missouri against the State of Illinois and the Sanitary District of Chicago, alleging that the purpose of the Sanitary District of Chicago and of its said channel is to reverse the natural current of the Chicago river and to convey the sewage of Chicago through a natural water-shed and discharge it into the Desplaines river, and thence into the Illinois river and finally into the Mississippi river, creating a public nuisance, injurious to the health and comfort of citizens of Missouri; and the prayer of the bill is to enjoin the Sanitary District from discharging its sewage through said channel and into the Desplaines river. The transcript also sets out a demurrer by defendants to said bill. It also contains an opinion by the Supreme Court of the United States upon the demurrer, reviewing the history and judicial construction of the constitutional enactment giving the Supreme Court of the United States jurisdiction of controversies between the several states of the Union, and holding that the bill in question states a case entitling complainant, not to prevent the use of the drainage channel as a waterway, but to prevent the pouring of sewage and filth through it upon satisfactory evidence of a real and immediate danger therefrom. The transcript also contains a dissenting

opinion by three members of that court. It also contains answers by the State of Illinois and by the Sanitary District of Chicago. In said answer of the Sanitary District are many allegations by said district relative to the size and purpose of its channel. There is also a supplemental bill, a demurrer to part thereof and an answer to the residue; and an order sustaining the demurrer to part of said supplemental bill. There is no final decree in the case. According to the record it is still pending. All that is decided by that opinion is that if the State of Missouri shall satisfactorily establish the allegations of its bill, it will be entitled to enjoin the discharge of sewage through the channel of the Sanitary District. We are at a loss to understand how that record could aid the jury in deciding the issues in the present case, or how it could be proper to submit to the jury the opinion of the Supreme Court of the United States upon grave constitutional questions, or to allow the Sanitary District to make evidence for itself by introducing its allegations of fact in its answers in said cause. The transcript was offered as a whole, and much of its contents could not be admissible here under any circumstances. Nor could it be left to the jury to decide whether the State of Missouri will be able to produce such proof as will secure it a final injunction against the discharge of sewage through the Sanitary District channel into the Desplaines river. The pendency of that suit presents no defense to this action. Defendant has constructed a water-way intended by it to be permanent. If plaintiff had delayed beginning this suit till the termination of that suit in the United States Supreme Court, and if after the statute of limitations had run against plaintiff's claim that suit should be decided adversely to the State of Missouri, and the plaintiff should then bring this suit and defendant should interpose a plea of the statute of limitations, it certainly would not be a sufficient reply to set up that the State of Missouri had filed a bill to enjoin the Sanitary District from discharging sewage through said channel and plaintiff did not know but it would be successful, and so delayed this suit to see

288    APPELLATE COURTS OF ILLINOIS.

VOL. 109.] Sanitary Dist. of Chicago v. Joliet Pioneer Stone Co.

how that suit would end. On demurrer to such a replication it would be held that plaintiff was bound to know that suit would be unsuccessful. If defendant has constructed a permanent improvement without a certainty of a legal right to maintain it, defendant should assume the risks rather than the owners of property overflowed thereby, and against whose right of action for the destruction of their property the statute of limitations may run before the litigation questioning defendant's right reaches a final decision.

Defendant offered in evidence a permit issued to it by the secretary of war. The court sustained an objection thereto. Defendant in its argument says the ruling was erroneous. No reasons are suggested or authorities cited to show that that document was competent proof in this case. It was held in Pennsylvania Co. v. Bond, 202 Ill. 95, 100, and in Harding v. The People, 202 Ill. 122, that a failure to cite authorities or advance any argument in support of a position taken in a brief, is a waiver of the point. Nor is the permit abstracted. We think no question concerning it is presented by this record. Besides, Isham Randolph, chief engineer of the Sanitary District, testified orally concerning the limitations of said permit, both on direct and cross-examination, and without objection.

The court refused two instructions requested by defendant. These are not numbered. The first in order in the record was properly refused, for two reasons: First, it singled out the records of the Sanitary District, the gauge readings produced by it, and the evidence of its engineers, and said this was proper and competent evidence for the consideration of the jury. All evidence which the court has admitted is competent and proper for the consideration of the jury, and an instruction which singles out certain portions of the proof and calls the attention of the jury specially to them, would naturally lead the jury to understand that the court considered such proof was for some reason entitled to special emphasis and consideration beyond that which the jury ought to accord to the other admitted evi-

dence. Special prominence should not be given to particular parts of the testimony. Second, the instruction assumed that the overflow of this land before 1900 depreciated its value, whereas there was proof tending to show such overflows enriched the soil and added to the value of the land, and did not injure the crops or its capacity to produce crops in more than two or three years out of thirty or forty years preceding 1900.

The other instruction requested by defendant, and refused, related in part to the non-liability of defendant for any damages caused to plaintiff by the natural overflow of the Desplaines river, by the waters discharged into said river by the Illinois and Michigan canal, and by the interruption to the current and flow of said river occasioned by a certain pile of ashes or cinders in the river above plaintiff's land on the opposite shore, near the works of the Great Western Tin Plate Company. Each of these matters was the subject of a separate instruction given at defendant's request, and these were also covered by several general instructions given at defendant's request. Such non-liability of defendant was fully stated and repeated in the given instructions. But this instruction was properly refused, because it said that in determining the damages for which defendant is liable in this case, the jury should exclude from their consideration the natural flow of the Desplaines river in all conditions, the flow from the Illinois and Michigan canal into said river, and the interruption to the current by said pile of ashes or cinders. Now these conditions actually existed, and were proved, and had a bearing upon the question what damages defendant inflicted upon plaintiffs, for the natural bed of the river might carry much of the water discharged by the Sanitary District, but for the waters of the river and the Illinois and Michigan canal, already lawfully there. These waters of the river and canal would result in the discharge of the Sanitary District channel overflowing lands which it would not reach if the river bed were empty. Yet for such overflow by the waters discharged by the Sanitary Dis-

290    APPELLATE COURTS OF ILLINOIS.

VOL. 109.] Sanitary Dist. of Chicago v. Joliet Pioneer Stone Co.

trict, the latter would be liable. It would not have been proper to tell the jury to exclude from their consideration the natural flow of the Desplaines river and the waters of the Illinois and Michigan canal. Such a direction would have been calculated to mislead the jury. The instruction was therefore properly refused, although the measure of damages was stated with partial correctness in the first clause of the instruction. The true measure of damages in this case, under the declaration, and treating this as a permanent improvement, was the depreciation in value of plaintiff's land, so far as that depreciation was caused by the waters discharged into the Desplaines river from the channel of the Sanitary District, near Lockport. Both sides introduced their testimony upon that theory. In its motion for a new trial defendant alleged that the court erred in giving the instructions given at plaintiff's request; and defendant has assigned for error here the overruling of said motion for a new trial, and also the giving of said instructions at plaintiff's request. But in its argument here, defendant has not discussed the instructions given at plaintiff's request, nor pointed out wherein it is supposed they are erroneous. It is settled practice in the courts of appeal in this state that where a party assigns errors, but does not argue them in his brief, they will be considered as waived. Strodtmann v. County of Menard, 158 Ill. 155; Gordon v. Commissioners of Highways, 169 Ill. 510; Dorn v. Ross, 177 Ill. 225; Harding v. The People, 202 Ill. 122. All assignments of error relating to the giving of instructions for plaintiff have therefore been waived by defendant. If, therefore, the rule for the ascertainment of the damages is stated somewhat vaguely and indefinitely in plaintiff's given instructions, defendant has waived the point. But, if the point were not waived, defendant could hardly be heard to complain thereof; for, in the first of defendant's refused instructions above referred to, defendant requested the court to direct the jury to "allow the plaintiff such damages, if any, as you may believe it has sustained by reason of the additional flow or discharge of

defendant's channel into the Desplaines river at Lock-port." This was quite as vague and indefinite as anything contained in plaintiff's given instructions, and defendant, having requested the court to adopt this as the rule to guide the jury, can not complain if the court gave the same rule in instructions requested by plaintiff.

The judgment is therefore affirmed.