ARCADIO MORALES, demandante y apelante, *v.* GREGORIO OTERO, demandado y apelado.

Núm. 7486.—*Sometido:* Febrero 3, 1938. *Resuelto:* Julio 20, 1938.

*Héctor González Blanes,* abogado del apelante; *Dubón & Ochoteco,* abogado del apelado.

El Juez Asociado Señor Hutchison emitió la opinión del tribunal.

El demandante en una acción de daños y perjuicios causados al ser conducido negligentemente el autocamión del demandado, apela de una sentencia adversa dictada después de haber sido declarada sin lugar una moción de *nonsuit.*

El juez de distrito en su relación del caso y opinión dijo que no se había demostrado que el demandado estuviera en el camión al ocurrir el accidente o que el autocamión formaba parte de alguna empresa del demandado. Luego, en respuesta a una petición para que se formulasen conclusiones adicionales, el juez dijo que: el camión que arrolló al demandante era en la fecha del accidente propiedad del demandado; la negligencia del chófer del autocamión fué la única y próxima causa del accidente y de los daños y lesiones sufridos por el demandante; como consecuencia próxima e inmediata del accidente y de la negligencia del chófer, el demandante sufrió una contusión en la región pectoral con hemoptisis, una contusión en la espalda, contusión en el muslo derecho y varias erosiones en el cuerpo. El juez se negó, por falta de suficiente prueba, a concluir que el chófer del autocamión era empleado del demandado y actuaba dentro de la esfera de su empleo.

Oscar Morales, chófer, declaró en síntesis lo siguiente, como testigo del demandante:

"El testigo conocía a Gregorio Otero y sabía a qué negocio se dedicaba éste; Otero tenía un camión que usaba en la compra y venta de mieles; el número de la tablilla del camión en abril de 1935 era H–927; en 1935 Otero usaba el camión en la compra y venta de mieles; usaba el autocamión en ese negocio; Jiménez Figueroa era empleado de Gregorio Otero; era el chófer de Otero y guiaba el camión

'Brockway' H–927; (en la repregunta,) el interés que el testigo tenía en el caso descansaba en el hecho de que el demandante, hermano del testigo, había sido tumbado y dejado en la carretera por Jiménez Figueroa; el testigo compadecía a su hermano; el testigo estaba interesado en que su hermano recibiese la indemnización que pudiera otorgársele de acuerdo con la ley; el testigo era comisario del barrio Buena Vista del municipio de Bayamón; Otero vivía en el barrio Bucarabones de la municipalidad de Toa Alta, como a siete kilómetros de Bayamón; en varias ocasiones el testigo había ido a Bucarabones a comprarle mieles a Otero; el testigo no recordaba la fecha, en 1934 y en junio de 1935; él había ido en su calidad de chófer, empleado como conductor de un autocamión e iba uno a comprar veinte drones; el testigo iba como chófer; el testigo iba como chófer, veinte drones de mieles; el testigo había acompañado a Ramón Figueroa y Antonio Hernández; Figueroa vivía en la calle Comerío; el testigo fué con Figueroa en junio de 1935, después del accidente; Antonio Hernández vivía en Barrio Nuevo, Bayamón; Ramón Figueroa compró veinte drones; Antonio Hernández era el dueño del camión e iba contratado a buscarlos; él no compró las mieles; el testigo era el chófer; Antonio Hernández no compró las mieles, él era el dueño del autocamión; Ramón Figueroa fué a comprar veinte drones a $3.30; Hernández era el dueño del camión, él no compró ningunas mieles; en 1934 el testigo había ido con otros 'elementos'; Antonio Hernández era el dueño del autocamión; el testigo no había declarado anteriormente que él había ido en 1934 a comprar mieles para Antonio Hernández y luego, en 1935, para Ramón Figueroa; el testigo no fué a comprar mieles en 1934; él era el chófer del camión; fué Constantino Fernández quién compró las mieles; Fernández estaba en España el día del juicio; fué en septiembre de 1934 que el testigo fué como chófer de Constantino Fernández a comprar mieles; Fernández fué en varias ocasiones a comprar cinco drones, que era la capacidad del autocamión; dos o tres veces en 1934; mientras el testigo actuaba como chófer el comprador iba siempre con un camión y llevaba al testigo como chófer para conducir la miel; en tales ocasiones las mieles compradas por Ramón Figueroa y Constantino Fernández habían sido transportadas en un autocamión guiado por el testigo; el testigo nunca había comprado personalmente mieles a Otero; Jiménez Figueroa había sido empleado de Otero por espacio de tres años; los compradores de las mieles se entendían con él cuando iban a comprar; él se encargaba de las mieles, Jiménez Figueroa actuando como chófer; el día del juicio en la Corte Municipal de Toa Alta, Jiménez Figueroa había declarado que él era empleado

de Otero; el juez le había preguntado quién era el dueño del camión y él había contestado que Gregorio Otero; el testigo se había visto con Jiménez Figueroa en varias ocasiones antes y después del accidente y Jiménez Figueroa le había dicho que él era empleado de Otero; Jiménez Figueroa le había dicho eso al testigo en la Central Constancia mientras cargaba mieles en 1934–35, en noviembre de 1934, antes del accidente, y en enero y julio de 1935—en julio de 1935 en la Central Constancia de Toa Baja; en noviembre de 1934 el testigo le había preguntado a Jiménez Figueroa cuánto ganaba y el testigo le había contestado que nueve dólares semanales; el testigo había visto a Jiménez Figueroa de nuevo en enero en la Central Juanita; el testigo no había hablado con él desde el día del juicio en la corte municipal.''

No encontramos ninguna seria discrepancia entre el testimonio de este testigo durante el examen directo y su declaración en el contrainterrogatorio. Él no dijo ni en el interrogatorio directo ni en el contrainterrogatorio que él mismo había comprado mieles a Otero e hizo constar con perfecta claridad que solamente guiaba el autocamión utilizado por Ramón Figueroa y Constantino Fernández en el transporte de las mieles compradas por ellos. Del hecho de que estos dos compradores alquilaran un camión para el transporte de las mieles compradas por ellos, no se desprende que Otero no utilizara su propio camión en la entrega de las mieles vendidas por él a otros compradores. Mucho menos implica ello que él no usaba su propio camión en su negocio de compra y venta de mieles. Las dos manifestaciones hechas durante el contrainterrogatorio al efecto de que Jiménez Figueroa estaba cargando mieles en la Central Constancia en noviembre de 1934, y que los compradores de mieles se entendían con Jiménez Figueroa, quien estaba a cargo de ellas como chófer de Otero, permanecieron intactas.

Oscar Morales era un testigo locuaz, pero él declaró tan libremente en el contrainterrogatorio como en el interrogatorio directo. Aparentemente él no le daba mucha atención a las preguntas hechas por el abogado y sus contestaciones no eran premeditadas. Sus respuestas no contestaban

siempre de una manera categòrica las preguntas que se le hacían. Poco antes de terminarse el contrainterrogatorio el juez le dijo al testigo que si escuchaba la pregunta con cuidado, él vería que podía contestarla sin referirse a otros asuntos. No encontramos evidencia alguna de una evasiva deliberada. Creemos que su testimonio, en su totalidad, estableció el hecho de que el camión H-927 era usado por Otero en su negocio. Nada hay que demuestre que el camión fuera usado en ninguna otra forma por Otero o por cualquier otra persona. El caso—aún con respecto a la cuestión que estamos considerando—no depende completamente del testimonio de Oscar Morales.

El título del camión H-927 al tiempo del accidente fué establecido por una certificación expedida ·por el Departamento del Interior. Como hemos demostrado, hubo una conclusión específica a ese mismo efecto. Hubo una conclusión específica al efecto de que la negligencia del chófer del autocamión fué la causa próxima del accidente y de las ·lesiones sufridas por el demandante. En *Sánchez* v. *Asiatic Petroleum Co.*, 40 D.P.R. 104, este tribunal resolvió, según se hace constar en el sumario, que:

"Cuando negligentemente se causa daño a una persona o a su propiedad por un vehículo de un establecimiento o empresa . . . . no es necesario que el perjudicado pruebe que dicho vehículo estaba manejado en ese momento por un empleado de tal establecimiento o empresa y que estaba en el cumplimiento de sus deberes como tal empleado."

Véase también: *Lotti* v. *The Charles McCormick Lumber Co.*, 51 D.P.R. 334.

En *Guzmán* v. *Ortiz*, 39 D.P.R. 184, 189, citamos con aprobación el siguiente extracto ·de 5 Wigmore (segunda edición) pág. 502:

"(2) Cuando el daño es ocasionado por el acto torticero del conductor de un vehículo, y la persona lesionada demanda al dueño del vehículo que es una persona distinta al conductor del mismo, es necesario que el demandante, para probar su caso, demuestre que el

conductor del vehículo era agente del dueño y que en el momento del accidente actuaba dentro de las atribuciones de su empleo. ¿Pueden estos dos hechos presumirse de la mera propiedad del vehículo? La respuesta debería ser afirmativa si tomamos en consideracón la facilidad relativa de la prueba entre las partes, las costumbres usuales de los dueños de vehículos y lo conveniente que es imputar la responsabilidad de no obtener prueba a la persona que posea un aparato de valor y peligroso, y quien, por consiguiente, debe tomar precauciones especiales contra su mal uso por personas irresponsables. La indiferente irresponsabilidad de los conductores de vehículos en general, su notorio egoísmo de monopolizar las carreteras contra los peatones, y la prevalecencia de homicidios involuntarios por las personas que conducen vehículos, quienes no dan valor alguno a las vidas de los demás en comparación con sus propias conveniencias, todos estos factores modernos exigen que esta regla y toda otra regla aplicable sea empleada para mejorar el grado de cuidado que debe exigire a los dueños de vehículos.

"No obstante, las cortes han tomado puntos de vista opuestos; algunas imponen al peatón inocente el peso de la prueba. En general las cortes son propensas a seguir una actitud poco práctica, inhumana y demasiado cautelosa."

Esto resuelve la cuestión de si el chófer del camión en· el caso de autos era o no un empleado del demandado y si actuaba o no dentro de las atribuciones de su empleo.

Si el demandante en el presente caso hubiese sido arrollado por un automóvil de turismo ocupado por la esposa e hijos del demandado, podría haber algún peso en el argumento del apelado al efecto de que esto, sin más, no sería suficiente para establecer el hecho de que el vehículo se estaba usando. en el negocio del demandado al ocurrir el accidente. Pero el camión del demandado no era un automóvil de turismo. No se usaba como tal al momento del accidente. Si no se estaba utilizando en el negocio del demandado, hubiera sido muy fácil para éste o para su chófer Jiménez Figueroa, ocupar la silla de los testigos y así declararlo. El hecho, cualquiera que fuese, era uno peculiarmente dentro del conocimiento de ambos. "La facilidad relativa de prueba entre las partes" era substancialmente la misma que hubiera sido

en la cuestión de agencia o atribuciones del empleo. Del hecho de que el demandante fué arrollado por el camión del demandado en una carretera pública, se desprende lógicamente, a nuestro juicio, que dicho vehículo se usaba en el negocio del demandado porque de ordinario un camión se utiliza en conexión con el negocio del dueño y no para su recreo ni para que otros lo disfruten. Otras consideraciones, supra, que tienden a sostener la presunción de agencia y atribuciones del empleo, no militan en contra de la corrección de tal inferencia. Mas esto no es todo. El camión viajaba aparentemente desde Toa Baja, donde la Central Constancia está localizada, hacia Toa Alta, donde vive el demandado. Conducía una carga de mieles. El demandado se dedicaba al negocio de mieles. Todas estas circunstancias, con o sin el testimonio de Oscar Morales, establecieron un caso prima facie en lo que se refería a la cuestión relativa a cualquier conexión necesaria entre el camión y el negocio del demandado.

*La sentencia apelada debe ser revocada y en su lugar esta corte dictará otra en favor del demandante por la suma de $495.00, con costas, sin honorarios de abogado.*

El Juez Asociado Señor De Jesús no intervino.