NICOLÁS GARCÍA, demandante y apelado, *v.* PABLO SUÁREZ, demandado y apelante.

Núm. 7785.—*Sometido:* Enero 16, 1940. *Resuelto:* Marzo 30, 1940.

416

*Angel A. Vázquez,* abogado del apelante; *Arturo Aponte* y *F. R. Aponte,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Éste es un *injunction* posesorio, procedimiento prescrito para que cuestiones que requieren una pronta solución puedan obtenerla que lleva tramitándose en las cortes de justicia alrededor de siete años.

La demanda original se presentó en septiembre 27, 1933, y unos días antes de vencerse el año, en septiembre, 1934, se dictó sentencia favorable al demandante. Apeló el demandado y como el taquígrafo falleciera sin haber transcrito sus notas, el demandado solicitó la celebración de un nuevo juicio. Se allanó el demandante y se accedió por la corte.

El juez propietario Sr. Arjona se inhibió por su propio acuerdo basándose en que su criterio estaba ya formado y el nuevo juicio se celebró ante el Sr. González Fagundo, juez sustituto, quien resolvió el caso por sentencia también favorable al demandante, el 1 de mayo de 1937. Contra ella apeló el demandado diez días después.

Así las cosas, en marzo 31, 1938, el demandado presentó una moción a la corte de distrito pidiéndole que declarara nulas todas las actuaciones del juez sustituto inclusa la sentencia y señalara día para que las partes estipularan la corte a la cual debía ser trasladado el pleito o decretara el traslado si las partes no se pusieren de acuerdo. El dos de junio la corte declaró la moción sin lugar y el demandado apeló seis días después.

En junio 24, 1938, se radicó en la Secretaría de esta corte la transcripción de los autos y la de la evidencia. La primera comprende los procedimientos referentes a las dos apelaciones. El caso quedó radicado bajo el número 7785.

En agosto 26, 1938, el apelante presentó su alegato. Contiene un señalamiento de ocho errores, el último de los cuales se refiere a la moción de nulidad.

El 10 de noviembre siguiente el demandante apelado pidió la desestimación del recurso por no haber un récord completo. Se opuso el apelado por escrito en diciembre 9, 1938, y tres días después se celebró la vista de la moción que fué resuelta en marzo 7, 1939, declarando el tribunal que no había lugar a la desestimación solicitada porque en los documentos elevados existía lo suficiente para juzgar el caso en sus méritos "y de faltar algo en los autos, éstos podrían ser subsanados por el mismo apelante." (54 D.P.R. 982.)

Señalada la vista del caso para diciembre 8, 1939, se suspendió por estipulación de las partes y señalada nuevamente fué celebrada en enero 16, 1940.

Como de ser nula la sentencia, no sería necesaria la consideración y resolución de los siete primeros errores señalados, comenzaremos por el octavo nuestro estudio.

En su moción alegó, en resumen, el demandado que dictada por el juez propietario de Humacao su orden de marzo 25, 1936, inhibiéndose del conocimiento del asunto, se nombró al juez propietario de Guayama para que continuara tramitándolo. Dictó cierta orden de suspensión;

Que en enero 7, 1937, a virtud de las muchas ocupaciones del juez propietario de Humacao, el Gobernador nombró juez sustituto del mismo por término de treinta días para actuar en casos criminales al abogado en ejercicio Sr. González Fagundo, quien sin autoridad dictó órdenes de suspensión en el pleito;

Que en marzo 2, 1937, el propio Sr. González Fagundo fué nombrado para sustituir al juez propietario durante su ausencia de la isla a virtud de licencia que se le concediera y que disfrutó hasta abril 30, 1937; y

Que el pleito se vió ante el juez sustituto en marzo 31, 1937, y se resolvió por sentencia dictada en mayo 1, 1937, aprobando luego el propio juez sustituto la transcripción, todo sin autoridad por haber expirado el término de su nombramiento.

■ Dos cuestiones previas suscita el demandante apelado en relación con el error, a saber, que tratándose de una apelación de una orden dictada después de sentencia, debió tramitarse por separado, y que habiéndose practicado prueba para resolver la moción, dicha prueba debió elevarse a esta corte por medio de una exposición del caso o pliego de excepciones.

La primera cuestión carece de importancia porque aunque se trata de apelaciones distintas pudieron tramitarse conjuntamente ya que se interpusieron en el mismo pleito.

■■ La segunda la tiene porque en verdad el medio de elevar a la corte de apelación la evidencia que en la corte sentenciadora se introduce es el indicado por el apelante. Conviene recordar que la misma cuestión fué suscitada por medio de una moción de desestimación presentada por el propio apelado y que esta corte la resolvió diciendo que en los

documentos elevados existía lo suficiente para juzgar el caso en sus méritos agregando sin embargo que de faltar algo en los autos éstos podrían ser subsanados por el mismo apelante. Al exponer y considerar ahora en definitiva los indicados méritos veremos lo que sobre los mismos resulta de los autos que se encuentran en el mismo estado, en cuanto al apelante se refiere, en que se encontraban cuando la moción de desestimación fué resuelta.

Dos casos invoca el apelante en apoyo de su contención, el de *Saavedra* v. *Corte,* 43 D.P.R. 288 y el de, *Annoni* v. *Blas Nadal's Heirs,* 94 F. (2d), 513.

En el primero, en el que el juez de distrito se inhibió en el conocimiento de un caso concreto como sucedió en el presente, dijo esta corte por medio de su Juez Asociado Sr. Wolf:

"El artículo 84 del Código de Enjuiciamiento Civil provee:

" 'Si un pleito o procedimiento se iniciare o estuviere pendiente ante una corte, y el juez de ésta estuviere incapacitado para actuar, o si por cualquier motivo la corte ordenare un cambio en el lugar de la vista, deberá aquél trasladarse a un tribunal convenido por las partes mediante estipulación por escrito o celebrada ante la corte y consignada en su libro de actas; y si no llegasen a ponerse de acuerdo, entonces se trasladará el asunto a la corte más cercana en que no exista el mismo inconveniente o la causa que originó el traslado, verificándose éste a otra corte de distrito.'

"Empero, existe otra ley en vigor en Puerto Rico que autoriza al Gobernador a designar jueces en ciertos casos. Esta lee así:

" '. . . *Disponiéndose,* que el Gobernador, a propuesta del Attorney General, podrá, si el servicio público lo exigiere, ordenar a cualquier otro Juez de Distrito que ocupe el puesto de cualquiera de los jueces nombrados regularmente y que se hallen temporalmente impedidos ya por enfermedad o por cualquier otra causa; . . .' (Leyes de 1904, pág. 94).

"Es bastante curioso que ambas leyes fueran aprobadas en 10 de marzo de 1904. Por tanto las cortes están obligadas a tratar de permitir que subsistan ambas leyes.

"La jurisprudencia de California es clara al efecto de que de acuerdo con el artículo 398 del Código de Enjuiciamiento Civil, que corresponde al 84 de nuestro Código, el juez en propiedad está

obligado a oír a las partes y finalmente a trasladar el caso. *Krumdick* v. *Crump,* 98 Cal. 117; *Livermore* v. *Brundage,* 64 Cal. 299.

"En el caso de *El Pueblo* v. *Juliá,* 25 D.P.R. 284, un juez en propiedad se hallaba ausente en vacaciones y se presentó la objeción de que la ley especial de marzo 10, 1904, no era aplicable a dicho caso. Esta corte resolvió que no solamente casos de enfermedad estaban incluídos sino también ausencias y casos similares. Leyendo cuidadosamente ambas leyes somos del criterio que la ley especial de marzo 10, 1904, cubre incapacidades en general así como los casos en que por tal incapacidad un juez no puede actuar en caso alguno, mientras que el artículo 84 específicamente comprende el caso de un juez incapacitado en determinado recurso como el presente. Por tanto, era el deber del Juez Mestre oír a las partes de conformidad con dicho artículo 84."

Y en el segundo, en el que también se trataba de un juez que se inhibió del conocimiento de determinado pleito, la Corte de Circuito de Apelaciones del Primer Circuito por medio del Juez Sr. Wilson, después de referirse a las leyes citadas en *Saavedra* v. *Corte,* supra, se expresó así:

"Resulta evidente que estos artículos autorizan al Gobernador para actuar, solamente en aquellos casos que por razón de incapacidad o ausencia del juez de distrito regular, no es posible realizar la labor judicial. En tal caso, el juez sustituto es nombrado para 'presidir la sala del Tribunal', y no para conocer de un caso en particular. *Saavedra* v. *Mestre,* supra. El Juez Foote no estaba incapacitado para presidir su corte y llevar a cabo toda otra labor judicial que no fuera este caso.

"Es claro asimismo, que el artículo 84 del Código de Enjuiciamiento Civil de 1911, Rev. St. & Codes 1913, sec. 5068, es el artículo aplicable a una situación como la presente, el cual dispone que siempre que un procedimiento se halle pendiente de trámite en una corte de distrito y el juez regular se halle incapacitado por cualquier motivo para conocer del mismo, se deberá trasladar tal caso a otro distrito. Es obvio que el Juez Foote pudo y debió haber actuado en armonía con lo que dispone este artículo.

"¿Era entonces Pérez un juez defacto por el hecho de que las partes no formulasen objeción alguna a su actuación como juez en este caso? No creemos que lo fuera. Para que pueda haber un juez defacto tiene que haber un cargo de jure que pueda ser desempeñado. (Citas.) En el caso de *Norton* v. *Shelby County,* 118 U. S.

425, 441, 30 L. ed. 178, dijo la Corte: 'Pero se alega que si la ley creando la junta era nula y los comisionados no eran funcionarios de jure, ellos eran sin embargo funcionarios defacto y que las actuaciones de la junta como un tribunal defacto tenían fuerza de ley en el condado. Esta alegación resulta controvertida por el hecho de que no puede existir un funcionario, ya de jure o defacto si no existe un cargo vacante que pueda ser desempeñado.'

   *       *       *       *       *       *       *

"De acuerdo con los estatutos de Puerto Rico, no surge un cargo de jure vacante, por el hecho de que un juez regular se halle incapacitado para conocer de *determinado caso pendiente*. El caso *debe* ser trasladado a otro distrito, de acuerdo con las disposiciones del artículo 84. El único cargo vacante que puede ser llenado por el Gobernador mediante nombramiento de un sustituto, es aquél para el cual puede nombrarse un sustituto, siempre que concurran las condiciones expresadas en el artículo 2 de la ley reorganizando la judicatura de Puerto Rico, o en el artículo 21 del Código de Enjuiciamiento Civil, 1911, Rev. St. & Codes 1913, sec. 5005, para llevar a efecto toda la labor judicial que pueda ser sometida a su consideración en el curso ordinario de los acontecimientos. No existiendo un cargo de jure vacante, Pérez no era juez ni de jure ni defacto. Él no se convirtió en un juez defacto mediante el consentimiento de las partes al juzgar este caso. Siendo sus actuaciones nulas, el caso debe ser devuelto a la Corte de Distrito de Mayagüez para ulteriores procedimientos que estén en armonía con el artículo 84 del Código de Enjuiciamiento Civil." *Annoni* v. *Blas Nadal's Heirs,* 94 F. (2d) 513, 514.

En tal virtud, no hay duda alguna de que el procedimiento que debió seguir el juez de Humacao al inhibirse del conocimiento de este pleito fué el marcado por el artículo 84 del Código de Enjuiciamiento Civil y que el nombramiento del juez de distrito de Guayama para intervenir en el mismo no estuvo autorizado por la ley. Tampoco la hay de que la intervención del juez sustituto Sr. González Fagundo en el pleito cuando fué nombrado exclusivamente para conocer de los asuntos criminales de la corte lo fué sin autoridad de ley.

Sin embargo, como dichos jueces sustitutos se limitaron a dictar órdenes que no envolvían en manera alguna la deci-

sión del pleito en sus méritos, no creemos que estos funda-mentos de la moción de nulidad revistan importancia decisiva.

■ Cuando el juez sustituto Sr. González Fagundo inter-vino en la celebración del juicio y resolvió el pleito por sentencia, no lo fué a virtud de su primer nombramiento si que en el ejercicio del poder que le confiriera el segundo, hecho según la propia moción del apelante en los siguientes términos:

" 'Whereas, Hon. Rafael Arjona Siaca, Judge of the District Court of Humacao, has been granted a leave of absence of 60 days, beginning March 1st, 1937.

" 'Whereas, it is necessary that a Judge be designated to handle the cases of the Court during the absence of the regular Judge.

" 'Therefore, I, Blanton Winship, Governor of Puerto Rico, by virtue of the authority in me vested by law, do hereby designate and appoint Attorney at Law, Francisco González Fagundo, to act as Judge of the District Court of Humacao, during the absence of the regular Judge, or until otherwise ordered by me.

" 'Witness my hand at the City of San Juan, Puerto Rico, this the 2nd day of March A. D. 1937.

" ' (Sgd.) Blanton Winship, Governor.'

"Véase Libro de Minutas de esta Corte, de 5 de marzo de 1937, tomo 122, folio 229.''

El nombramiento en sí mismo habiéndolo sido para sus-tituir a un juez ausente lo fué de acuerdo con la ley y la jurisprudencia. *Saavedra* v. *Corte,* supra, *Annoni* v. *Blas Nadal's Heirs,* supra, y leyes citadas en los mismos, y *Bal-baño* v. *Cintrón,* 53 D.P.R. 844, 847.

■ Siendo ello así, y encontrándose aún en la corte este caso, ¿pudo el juez sustituto considerarlo al igual que todos los otros pendientes e intervenir en él prescindiendo del pro-cedimiento marcado en el artículo 84 del Código de Enjui-ciamiento Civil, que no fué invocado por ninguna de las partes? Bajo las circunstancias concurrentes, nos inclinamos a contestar la pregunta en la afirmativa.

■ Ahora bien, el apelante sostiene que cuando el juez sustituto dictó su sentencia en mayo 1, 1937, y cuando luego

intervino en la tramitación de los autos de la apelación, ya había cesado de serlo. Por el contrario, el juez de distrito propietario en su resolución denegatoria de la moción de nulidad afirma que en mayo 1, 1937, cuando se dictó la sentencia, no se había hecho cargo todavía de la corte, en los siguientes términos:

"El fallo del Sr. González Fagundo fué también adverso al demandado y lleva fecha de 1 de mayo de 1937, cuando todavía no había tomado nuevamente posesión de su cargo el juez en propiedad, por no haber expirado todavía la licencia concedídale."

¿Hay datos en el récord para resolver el conflicto? Dejamos transcrito el nombramiento. Fué hecho por el Gobernador para actuar durante la ausencia del juez propietario, agregándose "or until otherwise ordered by me." La licencia concedida lo fué por sesenta días para empezar el primero de marzo, pero el nombramiento está extendido el 2 de dicho mes y al pie del mismo al transcribirlo, transcribimos también la referencia a las minutas de la corte del día 5 de marzo, 1937, lo que parece indicar que el documento se registró en ellas en la última fecha, a partir de la cual comenzó a tener efecto. Hablando por sí mismo el nombramiento y la referencia a las minutas hacen dudosa la resolución.

Es en otro documento en que más énfasis pone el apelante, a saber, la carta dirigida por el Procurador General Sr. B. Fernández García al abogado del apelante Sr. Angel A. Vázquez en contestación a otra que del dicho abogado recibiera. En la carta se dice: "En marzo 2, 1937, el Gobernador designó al Lic. Francisco González Fagundo para actuar como juez de dicha corte durante una licencia de sesenta días concedida al juez en propiedad y que disfrutó de marzo 5 a abril 30 de ese año." La fecha marzo 5 robustece lo que indica la referencia a las minutas. La fecha abril 30 está en contradicción con lo afirmado por el juez, o sea, que en mayo 1 siguiente aún no había vuelto a hacerse cargo de la dirección de la corte.

El documento es una carta, no una certificación de documentos. No explica la base que tuvo el Procurador General para expresar que el disfrute de la licencia se extendió sólo hasta el 30 de abril. La licencia lo fué por sesenta días. Del 5 de marzo al 30 de abril no habían transcurrido sesenta días. Y mayo 1, comenzada la licencia en marzo 5, estaba cubierto por los sesenta días.

En tal virtud, no destruyendo de modo terminante la evidencia aportada por el demandado apelante la afirmación que contiene la resolución apelada, queda la afirmación en pie y en su consecuencia la conclusión de que el juez sustituto actuó al dictar su sentencia de mayo 1, 1937, dentro del término de su nombramiento.

En cuanto a la actuación de dicho juez interviniendo después de vencido su nombramiento en la tramitación del récord de la apelación, bastará decir que la ley—artículo 219 del Código de Enjuiciamiento Civil—dispone que "Un juez o funcionario judicial podrá aprobar y firmar un pliego de excepciones aún después que dejare de ser tal juez o funcionario judicial" y por tanto que carece en absoluto de razón el apelante al sostener que dicha actuación lo fué sin autoridad de ley.

Despejada de tal modo la situación, procederemos al estudio de los otros errores señalados. Son siete y por ellos se sostiene que la corte sentenciadora erró al declarar sin lugar las mociones del apelante sobre eliminación de ciertos particulares de la demanda, sobre eliminación de la demanda complementaria y sobre archivo del pleito, errando también al desestimar la excepción previa a la demanda complementaria, al dictar sentencia en contra de la ley y sin base en la evidencia, al decretar el recobro del terreno y la demolición de lo edificado y al imponer el pago de honorarios de abogado a la parte demandada.

El primero de dichos señalamientos, o sea el que se refiere a la eliminación de varios particulares de la demanda, carece por completo de importancia.

No habiéndose demostrado que la permanencia de dichos particulares en la alegación perjudicara al demandado, aunque éste quizá técnicamente pudiera tener razón al sostener que estaban de más, habría que concluir que no se trataba de un error capaz de producir la revocación de la sentencia y por tanto sin importancia decisiva. "La negativa a eliminar alegaciones de una demanda o de particulares contenidos en ellas que en nada perjudican a la parte demandada, no es error", se resolvió en *López v. American Railroad Co. of P. R.*, 50 D.P.R. 1, 6.

▇▇▇▇ Para el estudio y resolución de los otros señalamientos de error, precisa conocer los hechos envueltos en el litigio.

La demanda se tituló sobre *injunction* para retener la posesión y fué presentada en septiembre 27, 1933.

En ella alegó el demandante que había estado y estaba en la posesión de una finca urbana ubicada en Luquillo, sitio conocido por Pueblo Viejo, compuesta de un solar de quinientos setenta y ocho metros cuadrados en lindes por la derecha entrando que es el Norte con casa de Coca Hermanos hoy de la Sucesión de Aurelio Carambó, en una extensión de treinta y cuatro metros; por el Sur con casa tienda de Coca Hermanos hoy del demandado Pablo Suárez, en una extensión igual; por el frente con la calle, en una extensión de diez y siete metros, y por el fondo en extensión igual, con tierras de la finca "Paloma" de doña Francisca Bas;

Que el demandado personalmente y por medio de sus hermanos y empleados se internó en el solar a principios de septiembre, 1933, y está realizando obras y excavaciones en una parte del mismo como de quince metros de largo por dos de ancho que se describe debidamente; y

Que los actos realizados por el demandado lo han sido de manera violenta, contra la voluntad del demandante y con el propósito de incautarse de la porción descrita para construir un anexo a la casa de su propiedad.

En septiembre 29, 1933, la corte señaló el diez de octubre siguiente para la comparecencia de las partes. Cinco días antes del señalamiento el demandado archivó una moción eliminatoria, y en abril de 1935 o sea un año y medio después, su contestación.

En ella negó haber realizado lo que se le imputaba en la demanda y en oposición alegó que está en posesión desde 1929 en que el Municipio de Luquillo se lo entregó a virtud de ordenanza, de un solar que describe, dentro de cuyo perímetro pero dejando un callejón de entrada hacia la parte norte para el paso de sus trabajadores y del dueño del solar contiguo, construyó hacia fines de 1929 una casa terrera dedicada a panadería con su horno de concreto y una acera de un metro cuarenta y cinco centímetros de ancho y veinte y cuatro de largo, siendo la colindancia del terreno ocupado por la acera por el norte la casa del demandante, por el sur el edificio de la panadería del demandado, por el este terrenos del municipio poseídos por el demandado y por el oeste "La Paloma";

Que en agosto 23, 1933, cambió hacia el lado norte las dos bocas de su panadería que estaban al oeste, situando la leña en la acera y colocando un alero adherido a la parte alta, lado norte, del edificio de la panadería sostenido por pilares que penetran en el terreno ocupado por la acera, cambios que fueron realizados sin oposición del demandante y se terminaron antes de que se le notificara la demanda;

Que el terreno envuelto en el pleito es el ocupado por la acera y no ha sido poseído por el demandante en momento alguno a contar del año 1929, habiendo por tanto prescrito la acción que sobre el mismo pudiera tener el demandante.

En abril 25, 1935, el demandante archivó una demanda complementaria alegando que después de radicada la demanda original el demandado realizó y terminó el tinglado de madera y zinc que ocupa en toda su extensión la porción de su solar que describió en su demanda y que con esa terminación el

demandado ha privado por completo al demandante de la posesión de la indicada porción de terreno.

Terminó pidiendo a la corte que tuviera en cuenta dichos hechos acaecidos después de la presentación de la demanda y ordenara por su sentencia la eliminación de lo construído dejando el terreno ocupado libre y expedito en toda su extensión.

El demandado pidió en mayo 2, 1935, la eliminación de la demanda complementaria y el archivo del pleito por académico. Además excepcionó y contestó la demanda complementaria alegando que no aducía hechos suficientes para determinar una causa de acción, negando que realizara la construcción de que se trata después de notificado de la demanda, insistiendo en que la empezó y terminó antes.

En marzo 9 de 1936 o sea diez meses después de radicados los últimos documentos, la corte declaró sin lugar la moción eliminatoria y la excepción previa, y señaló la vista del pleito para el diez y seis de dicho mes.

Celebrada la vista, se dictó la sentencia apelada fundada en la siguiente opinión:

"El 31 de marzo de 1937, señalado para la vista de este caso, comparecieron las partes, el demandante en persona y representado por su abogado Arturo Aponte, y el demandado personalmente y asistido del suyo, Angel A. Vázquez, y anunciaron estar listas para entrar en juicio.

"Practicada la prueba de ambas partes, el tribunal fijó el día 9 de abril de 1937, para llevar a efecto una inspección ocular de la parcela de terreno en litigio, la cual tuvo lugar en dicha fecha con la asistencia de los litigantes y sus abogados.

"Examinadas detenidamente las alegaciones de las partes, y considerada toda la evidencia ofrecida por ambas partes en apoyo de las mismas, el tribunal llega a la conclusión que el demandado ha realizado los actos de despojo en la parcela de terreno del demandante y que es objeto de litigio tal como se alega en la demanda original y complementaria radicadas en este caso, por cuyo motivo declara con lugar dichas demandas en todas sus partes. Se condena, además, al demandado en costas, incluyendo la suma de $150.00 para honorarios de abogado."

Como sabemos el apelante sostiene que la corte erró al negar la eliminación de la demanda enmendada, el archivo del pleito y la excepción previa a la dicha demanda enmendada, cuestiones todas que guardan relación entre sí.

No hay duda alguna que el pleito en su origen lo fué para retener la posesión y que a virtud de los hechos alegados en la demanda complementaria lo es para retenerla.

¿Pudo permitirse la radicación de tal demanda complementaria? Creemos que dadas las circunstancias concurrentes la pregunta debe contestarse en la afirmativa y por tanto que no fué cometido el segundo de los errores señalados, ni tampoco el tercero porque si la demanda complementaria quedaba en los autos, no procedía desestimar el pleito por académico.

Es cierto que los nuevos hechos debieron alegarse inmediatamente después de tenerse conocimiento de ellos, pero no vemos que la dilación pudiera causar perjuicio alguno al demandado que conocía perfectamente la situación.

Tampoco que pueda alegarse con éxito la prescripción de la acción. El *injunction* se había entablado. La acción estaba en pie. La fecha de la alegación formal de que los actos intentados realizar se habían realizado, no debe tomarse como punto de partida, si que la de la iniciación del *injunction*. Se trata de un procedimiento en equidad que pudo resolverse y que en verdad parece que se resolvió por el primer juez que intervino en el mismo, sin la formulación de la demanda complementaria, tomando en consideración los hechos tales como resultaron comprobados por la evidencia aportada en el juicio.

Conviene que citemos del caso de *Collins* v. *Sargent*, 89 Cal. App. 107, 112, ratificado años más tarde en el de *Union Oil Co.* v. *Reconstruction Oil Co.*, 20 C. A. (2d) 170, 184, lo que sigue:

"El objeto de una demanda complementaria es traer a la consideración de la corte y de la parte contraria hechos que ocurrieron después de haberse comenzado la acción, y que afectan, o pueden

afectar, los derechos alegados y la resolución solicitada en la acción instituída. (Citas.) Generalmente, los derechos deben determinarse tal como se encontraban al comenzarse una acción, a menos que subsiguientemente ocurra algún acontecimiento que afecte la cuestión en controversia; por ejemplo, un traspaso del título de la propiedad envuelta en el litigio, ocurrido después de haberse entablado los procedimientos, y la corte no puede pasar a considerar tales hechos, sucedidos posteriormente, a menos que se le presenten a través de una alegación complementaria. (*Metropolis etc. Sav. Bank* v. *Barnet,* 165 Cal. 449, 132 P. 833.) Tales hechos, que cambian las responsabilidades de los demandados y la naturaleza del remedio solicitado, no pueden ser presentados por medio de una enmienda a la demanda. (*Van Maren* v. *Johnson,* 15 Cal. 308, 311, 312.)

"La regla general, sujeta a determinadas excepciones, es al efecto de que en acciones en ley, el derecho a una sentencia depende de los hechos como éstos existen al comienzo de la acción, pero no es ésa la regla en equidad. El remedio concedido en equidad es tal como la naturaleza del caso y los hechos, como éstos se encuentren al final del litigio, lo demanden; y en acciones en equidad, no se requieren demandas complementarias para poder traer ante la corte aquellos hechos y circunstancias ocurridos desde la radicación de la demanda original, que resultan evidencia pertinente sobre los hechos en litigio en la causa original. Resultarían materia redundante (*surplusage*) si fueren alegados en una demanda complementaria, y la equidad no requiere cosas inútiles. (*Penn. Co.* v. *Bond,* 99 Ill. App. 535, 544, confirmado, véase 202 Ill. 95, 66 N. E. 941)."

Tampoco erró la corte al declarar sin lugar la excepción previa del demandado a la demanda complementaria, excepción que está predicada a la tesis sostenida por el apelante en los señalamientos segundo y tercero o sea que aquí se trata únicamente de un *injunction* para retener la posesión y no de uno para recobrarla.

El quinto error se refiere a la insuficiencia de la prueba. A nuestro juicio no existe.

Se insiste principalmente en que no se identificó debidamente la finca. La mejor contestación es la propia sentencia apelada que contiene una descripción completa de la porción ocupada que se ordenó que quedara "libre y expedita bajo la posesión del demandante sin perturbación alguna por

parte del demandado,'' y de la finca del demandante de la que dicha porción forma parte, cuya descripción encuentra apoyo en las alegaciones y en la evidencia.

Y en cuanto a la resolución del conflicto entre los testigos de ambas partes en favor de los de la demandante, sólo hay que decir que no se ha demostrado pasión, prejuicio o parcialidad, ni error manifiesto. Dos jueces en dos distintas ocasiones la apreciaron de igual modo.

Tampoco se cometieron por la corte los errores sexto y séptimo. El pronunciamiento sobre eliminación del anexo o tinglado construído por el demandado sobre la porción de terreno que sin derecho ocupara y que se le mandó dejar libre y expedita bajo la posesión del demandante, está autorizado por los hechos y la ley. También la imposición de las costas incluyendo ciento cincuenta dólares para honorarios del abogado del demandante.

*La sentencia debe confirmarse.*