CARLOS ACHA, menor de edad, representado por su padre con patria potestad, EDUARDO ACHA, demandante y apelado, *v.* RAMÓN NEVARES, demandado y apelante.

Núm. 8261.—*Sometido:* Junio 6, 1941. *Resuelto:* Julio 23, 1941.

*R. Rivera Zayas* y *Joaquín Velilla*, abogados del apelante; *Géigel & Silva*, abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

El presente es un pleito sobre daños y perjuicios. Se reclamaron tres mil dólares y se concedieron quinientos, más las costas, sin incluir honorarios de abogado. Se apeló de la sentencia. La parte victoriosa archivó su memorándum de costas ascendentes a $64.70. La parte contraria lo impugnó y la corte lo redujo a $39.70. También se apeló de la resolución. Ambos recursos se han tramitado conjuntamente.

La demanda se interpuso por Carlos Acha, menor de edad, representado por su padre con patria potestad, Eduardo Acha. En ella se alegó, en resumen, que el demandante tenía diez y nueve años de edad y el demandado, Ramón Nevares, era mayor de edad y propietario de una lechería o vaquería denominada "Las Monjas", en Río Piedras, siendo dueño de un carro tirado por un caballo que utilizaba en su negocio.

Que en la tarde del 18 de junio de 1937 en la avenida *D* esquina a la calle *N* de la Urbanización Eleanor Roosevelt, Río Piedras, guiado el carro por el empleado del demandado Erasto Vázquez que en ese momento actuaba dentro de su empleo, arrolló al demandante y le causó la fractura del pie derecho, varios golpes en el pecho y contusiones en la pierna derecha, teniendo que hospitalizarse por mes y medio y sufrir "intensos dolores físicos y profunda angustia mental."

Y que el acto se debió a la negligencia del empleado que conducía el carro a velocidad exagerada sin tomar en consideración el ancho de las calles y las curvas, sin tener campana, timbre, bocina u otro aparato de alarma, abandonando sin motivo su derecha sin reducir su velocidad ni dar aviso.

El demandado presentó una moción eliminatoria que fué declarada sin lugar. Alegó la excepción previa de no aducir la demanda hechos suficientes para determinar una causa de acción en contra suya. Y su excepción fué también desestimada. Contestó entonces admitiendo ser dueño de una vaquería y de un carro tirado por un caballo que dedicaba a su negocio y negando los otros hechos de la demanda por falta de información y creencia. Como defensas especiales alegó que de haber ocurrido el accidente se debió a la negligencia contribuyente del demandante que caminaba con otros amigos sin dirección fija, sin mantenerse en la derecha del camino y sin prestar atención al ruido del vehículo y al aparato de alarma con que avisaba su marcha, y que según su información y creencia el demandante ha recibido cabal compensación por los perjuicios sufridos de la "U. S. Employers Compensation Commission."

Llamado el pleito para juicio y antes de comenzar la práctica de la prueba el demandante solicitó que habiendo llegado a la mayor edad se tuviera por enmendada la demanda en el sentido de sustituir al demandante actuando por su propio derecho en vez de por la representación de su padre. Se opuso el demandado y la corte decretó la sustitución. Se procedió a la práctica de la prueba del demandante. Terminada, el demandado manifestó que sólo llamaría al Dr. Alonso quien declararía que el pie del demandante fracturado no presentaba señales exteriores de haberle pasado por encima la rueda del vehículo y el demandante aceptó que de llamarse al doctor declararía en ese sentido.

Basándose en las alegaciones y las pruebas según el estudio que de las mismas hizo en su relación del caso y opinión, dictó la corte de distrito la sentencia a que ya nos referimos, en marzo 11 de 1940.

Para sostener sus recursos señala el apelante ocho errores como cometidos por la corte sentenciadora al actuar sin jurisdicción, al declarar sin lugar la moción eliminatoria y

la excepción previa, al llegar a determinadas conclusiones de hecho, al no declarar que el accidente se debió a la negligencia contribuyente del demandante, al resolver que las calles de "Eleanor Roosevelt" eran públicas, al condenar al demandado a pagar cualquier indemnización y al obligarlo al pago de $39.70 por costas.

Esos errores se señalan y sostienen de manera completa e inteligente por el apelante en su alegato, exponiendo con claridad los hechos y con abundancia y sabiduría las autoridades, y se impugnan de igual modo por el apelado en el suyo. Ambos alegatos hacen honor a la profesión en general y en particular a los distinguidos letrados que los firman.

█ Por el primer señalamiento se levanta una cuestión de jurisdicción, la de que habiéndose establecido la barriada Eleanor Roosevelt donde ocurrió el accidente base de la reclamación, por el Gobierno de los Estados Unidos de América en cumplimiento del proyecto federal sobre eliminación de arrabales por mediación de la agencia federal denominada "Puerto Rico Reconstruction Administration," el conocimiento del pleito corresponde a las cortes federales y no a las insulares.

No tendremos necesidad de ahondar en el estudio del error. Unos dos meses después de archivado el alegato en este caso, esta propia corte en el de *López* v. *Corte,* 58 D.P.R. 115, 127, resolvió la misma cuestión en los siguientes términos:

"De acuerdo con los hechos admitidos y la jurisprudencia y estatutos a que nos hemos referido, opinamos y resolvemos que los Estados Unidos al comprar y tomar posesión de los terrenos de la Urbanización Eleanor Roosevelt, no asumieron *ipso facto* jurisdicción exclusiva sobre dicha urbanización, por no pertenecer las edificaciones en ella construídas a la clase de 'otros edificios necesarios' a que se refiere la Constitución; que no habiéndose alegado ni presentado evidencia alguna de la aceptación de jurisdicción exclusiva por el Gobierno Federal, estamos obligados a presumir concluyentemente que no ha habido tal aceptación; y por último, que si El Pueblo de Puerto Rico en algún momento o por cualquier causa dejó de tener

jurisdicción civil y criminal sobre los terrenos y sobre los habitantes de dicha urbanización, esa jurisdicción fué readquirida por virtud de las disposiciones de la sección 421, supra, con la sola y única limitación de que El Pueblo de Puerto Rico no puede intervenir en forma alguna en la administración de la barriada, ni realizar acto alguno que pueda destruir o disminuir el uso efectivo de las propiedades para los fines a que han sido dedicadas.''

No hubo error. La corte tuvo jurisdicción para conocer del pleito.

■ Tampoco se cometió o tiene el carácter de error capaz de producir la revocación de la sentencia de haberse cometido, el segundo de los señalados. Nos referimos a la negativa de la corte a eliminar de la demanda los particulares que solicitó en su moción el demandado.

Se pidieron once eliminaciones comprendiendo la segunda siete particulares todas ellas por tratarse de conclusiones legales o materia argumentativa, impertinente y redundante.

Tal vez entrando en un análisis minucioso podría encontrarse que técnicamente asiste la razón al apelante en algunas de sus peticiones, pero en ninguna se demuestra que dicha parte recibiera un verdadero perjuicio, y el artículo 142 del Código de Enjuiciamiento Civil, ed. 1933, ordena:

''En cualquier estado de un pleito la corte no tomará en cuenta algún error o defecto en las alegaciones o procedimientos que no afecten a lo esencial de los derechos de las partes, y no se revocará o invalidará ningún fallo por razón de dicho error o defecto.''

Aplicando la regla a la materia de eliminaciones, resolvió esta Corte en *Pueblo* v. *Sucesión Valdés,* 31 D.P.R. 223, copiando del resumen:

''La desestimación de una moción para eliminar de la demanda términos que envuelven conclusiones de ley cuando tales defectos son meramente técnicos, de ser un error, no es motivo bastante para una revocación.''

Véanse además los casos de *López* v. *American Railroad Co. of P. R.,* 50 D.P.R. 1 y *García* v. *Suárez,* 56 D.P.R. 414, 424.

▆▆▆▆ Examinemos el tercer señalamiento, el que se levanta con motivo de la excepción previa a la demanda. Se sostiene en primer término que de la demanda no surge una buena causa de acción en contra del demandado porque en ella no se alega que éste estuviera en el carro y acompañara al conductor, ni tampoco que el vehículo se utilizara en una empresa comercial o de carácter público, y en segundo término se discute una cuestión que surgió con posterioridad a la presentación de la excepción, la de la enmienda a la demanda para continuarla el demandante por derecho propio.

A nuestro juicio la demanda es suficiente. No era necesario que alegara que el demandado iba en el carro alegando como alega que dicho demandado "era propietario de una lechería o vaquería denominada 'Las Monjas' . . ." y "de un carro tirado por caballo, que utilizaba en su negocio de lechería o vaquería", carro que fué el que arrolló al demandante.

Recientemente en el caso de *Aponte* v. *Palacios,* 55 D.P.R. 697, 699, dijo esta corte:

"La contención principal del apelante es que la demanda no aduce suficientemente que el demandado se dedicaba a una empresa. Quizá la alegación pudo ser algo más específica, mas somos del criterio que el párrafo tercero, especialmente al alegar que el automóvil se dedicaba al transporte de leche, describe la explotación de una empresa mercantil. Esto es algo robustecido por las palabras 'tablilla C–327', puesto que estas tablillas, y de ello podemos tomar conocimiento judicial, son las usadas en automóviles generalmente dedicados al comercio."

El hecho de que nada se alegara aquí en relación con la tablilla, no importa. Esa alegación hubiera reforzado el hecho de tratarse de una empresa, pero ello no quiere decir que lo alegado por sí solo no sea bastante. Una persona que es dueña de una vaquería y que posee además un carro que utiliza en su negocio de lechería, cae dentro de las siguientes prescripciones de los artículos 1802 y 1803 del Código Civil, ed. 1930, a saber:

"Artículo 1802.—El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado·a reparar el daño causado."

"Artículo 1803.—La obligación que impone el artículo anterior es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

"Lo son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones.
"

■ Tampoco erró la corte al permitir la enmienda. Dados los términos en que se redactó la demanda desde un principio, nada reclamó el padre para sí. Fué el hijo el que actuó, siendo menor representado por su padre, y al arribar a la mayor edad por su propio derecho. No se varió con ello la acción ejercitada y en tal virtud era la enmienda permisible.

Nada encontramos en los casos de *Orta* v. *P. R. Railway, L. & P. Co.*, 36 D.P.R. 743 y *Ruberté* v. *American Railroad Co.*, 52 D.P.R. 471, que cita el apelante que sea contrario a esa conclusión. El caso de *J. Ochoa & Hnos.* v. *J. González Clemente & Co.*, 29 D.R.R. 1015 que también cita presenta una situación bien distinta.

Si el padre hubiera reclamado para sí entonces tendría razón el apelante, pero aquí lo que hizo el padre según se desprende de los términos en que está redactada la demanda fué cumplir con el deber que le impone el artículo 153 del Código Civil, ed. 1930, como sigue:

"Artículo 153.—El padre y la madre tienen, respecto de sus hijos no emancipados:

"1. El deber de alimentarlos, tenerlos en su compañía, educarlos e instruirlos con arreglo a su fortuna, y representarlos en el ejercicio de todas las acciones que puedan redundar en su provecho.
"

Que el menor que recibió el daño tenía una acción para recobrar los perjuicios que se le causaron, es evidente, y que esa acción subsistió al arribar el menor a su mayoridad, evidente es también. Lo que varió en el demandante fué la capacidad para actuar. Cuando era menor no la tenía plena y tuvo que completarla el padre. Al ser mayor cesó esa necesidad y era lo lógico y lo legal que actuara por sí mismo.

■ Como se ha resuelto repetidamente por esta corte, la fuente original de la acción para la reclamación de daños y perjuicios causados por acción u omisión interviniendo culpa o negligencia, está en el artículo 1802 del Código Civil, ed. 1930. La que luego se creó a favor del padre o de la madre a virtud de los artículos 60 y 61 del Código de Enjuiciamiento Civil, es distinta. En el caso de *Rivera* v. *Reyes*, 31 D.P.R. 440, 443, dijo esta corte:

A nuestro juicio no es posible llegar a la conclusión que sostiene la apelada. La acción la inició ella en su carácter de madre. Reclamó para ella por los daños y perjuicios a ella ocasionados. La actitud de las partes y el fallo de la corte son claros. Sólo hay un párrafo de la demanda que podría interpretarse en sentido contrario, pero no es tan fuerte que pueda por sí solo servir de base para variar en los actuales momentos la acción.

"La acción que compete a la madre y la que compete al hijo, son distintas. La ley aplicable es el artículo 60 del Código de Enjuiciamiento Civil. Véase el caso de *Arreche* v. *P. R. Ry., L. & P. Co.*, decidido en esta misma fecha. Pomeroy, resumiendo la jurisprudencia de California, interpretativa de preceptos de ley iguales al nuestro, dice:

" 'La disposición final de este artículo ha sido motivo de perplejidad considerable y objeto de cuidadosa atención en decisiones recientes de nuestra Corte Suprema.

" '1. Con respecto a la indemnización que en los casos de lesiones a un menor debe concederse en una acción establecida al amparo del artículo 376: en tales casos surgen dos causas de acción, una en favor del padre o del tutor por las pérdidas sufridas por él con motivo del daño causado al niño o pupilo: *Durkee* v. *Central Pac. R. R. Co.*, 56 Cal. 388; 38 Am. Rep. 59. En este caso se consideran las cuestiones que ahora examinamos, y en el curso de la opinión de la corte, escrita por el Juez Presidente Morrison, se dice: "Cuando

la acción es establecida por el padre, la pérdida de servicios, la asistencia médica, los gastos de la curación y otros particulares semejantes deben ser considerados por el jurado, y en tales casos es la regla conceder una indemnización.....Cuando se establece la acción a nombre del niño entonces los factores determinantes de la indemnización son otros distintos e independientes. El niño es indemnizado no por la pérdida de tiempo o servicios, ni por la asistencia médica o los gastos de curación, sino por los daños a su persona, tales como el dolor y el sufrimiento, tanto físicos como morales, la desfiguración, etc.''....' ''

El cuarto error se formula como sigue: ''La corte inferior cometió manifiesto error, perjudicial sustancialmente al demandado, al hacer la apreciación de la prueba y concluir, entre otras cuestiones de hecho, que: (*a*) el carro a que se refiere la demanda y la prueba fuese propiedad del demandado; que fuese guiado o conducido por un empleado suyo; que lo fuese dentro del curso de su empleo; que no tocara el conductor aviso de alarma; que fuese negligente al no seguir por su derecha y desviarse hacia la izquierda; que el accidente se debiera a la negligencia del conductor del vehículo, y que el demandante sufriera dolores físicos y molestias; y (*b*) que el demandado fuera negligente en concepto de principal del conductor del vehículo referido.'' Y el quinto y el sexto así: ''Quinto error. La corte inferior erró al no declarar que el accidente se debió a la negligencia contribuyente del demandante.'' ''Sexto error. La corte inferior erró al declarar que en la fecha del accidente las calles de la Urbanización Eleanor Roosevelt eran públicas.''

Hemos examinado la transcripción de la evidencia y a nuestro juicio las conclusiones a que llegó la corte sentenciadora encuentran apoyo en la misma.

Los hechos declarados probados fueron:

''Que el día 18 de junio de 1937, como a las dos de la tarde, el demandante, mensajero de la P.R.R.A. en las obras de la Urbanización Eleanor Roosevelt en Hato Rey, caminaba por la calle *B* en dirección de la calle *D*, de dicha urbanización y al ir por esta última lo hacía por la izquierda; que dichas calles estaban en proceso de

construcción, pero ya las calles *B* y *D* estaban afirmadas, según declaró el ingeniero Ramírez, pero todavía no habían sido recibidas por la P.R.R.A. de los contratistas; que por dichas calles se transitaba por el público para ir a la carretera que se dirige al Sanatorio Insular porque la regular estaba cerrada; que en la intersección de las calles *B* y *D* con la *N,* que es donde empieza la calle *D* había un montículo de tierra en el que luego se hizo un jardín; que en el momento en que el demandante iba ya por la calle *D,* un carro tirado por un caballo, manejado por Erasmo Vázquez, que venía corriendo por la calle *B,* al dirigirse y entrar en la calle *D,* se desvió hacia la izquierda de la calle y sin haber tocado señal de aviso con campana o timbre, pues no tenía aparato de alarma alguno, arrolló al demandante ocasionándole múltiples contusiones en el tercio superior de la pierna derecha hasta el tobillo y la fractura del extremo inferior de la tibia derecha;...que el carro que arrolló al demandante tenía pintado un rótulo que decía, más o menos, lo siguiente: 'Vaquería o Lechería Las Monjas de Ramón Nevares. Licencia Núm. 4';..."

"Sostiene el demandado," dijo luego la corte en su relación del caso y opinión, "que no se ha probado que el carro de caballo que ocasionó las lesiones al demandante pertenezca al demandado ni que Erasmo Vázquez fuera empleado suyo ni estuviera guiando dicho carro en el curso de su empleo, especialmente porque las calles de la Urbanización Eleanor Roosevelt no eran calles públicas en la fecha del accidente."

Y resolvió:

"Ya hemos dicho que la prueba demuestra que aun cuando dichas calles estaban en vías de construcción ya el público transitaba por ellas, más aun, que tenía que hacerlo para ir al Sanatorio Insular, de manera que la argumentación del demandado carece de peso. En cuanto a la propiedad del carro, está admitida en la alegación 3 de la contestación, ya que la demanda se refiere a un solo carro y no a la posibilidad de que el demandado fuera dueño de otros carros. Se ha probado, además, que el rótulo que tenía el carro llevaba el nombre de la lechería o vaquería del demandado y el número de la licencia. Esto, unido a la admisión contenida en la contestación, es suficiente para establecer la presunción, que no ha rebatido el demandado, de que el carro le pertenecía.

"Somos de opinión que, tanto en cuanto a este punto como al de la agencia del conductor del carro, es aplicable la jurisprudencia relacionada con los mismos hechos en cuanto a vehículos de motor. Véase 9 Blashfield, *Cyclopedia of Automobile Law and Practice* 338; *Tieman* v. *Red Top Cab Co.*, 3 P. (2d) 381; *Mann* v. *Stewart Sand Co.*, 243 S. W. 406 y 96 A.L.R. 638.

"En cuanto a la agencia, véanse los casos de *Sánchez* v. *Asiatic Petroleum Co.*, 40 D.P.R. 104; *Almodóvar* v. *Acosta*, 43 D.P.R. 201; *Lotti* v. *McCormick Lumber Co.*, 51 D.P.R. 334; *Morales* v. *Otero*, 53 D.P.R. 569 y *Aponte* v. *Palacios*, 55 D.P.R. 697, que sostienen la doctrina de que la prueba de que el demandado era dueño del vehículo que causó los daños crea la presunción *juris tantum* de que la persona que lo guiaba era empleada o agente del demandado y que actuaba en el curso del desempeño de sus atribuciones.

"De acuerdo con los hechos probados, somos de opinión que el conductor del carro fué negligente al no seguir por su derecha y permitir que se desviara hacia la izquierda de la calle, sin tocar aviso de alarma y al arrollar al demandante, ocasionándole las contusiones y la fractura antes descritas."

Hemos estudiado la jurisprudencia que se cita, mucha de ella de esta propia corte, y la encontramos aplicable. Nada más es necesario añadir. Los errores no fueron cometidos.

■ Por el séptimo error se levanta la cuestión relativa a la indemnización.

En su relación del caso y opinión apreciando rectamente la evidencia, la corte declaró probado:

"...que el demandante estuvo en la Clínica San José desde el 18 de junio hasta el 28 de julio de 1937, donde hubo que inmovilizarle la pierna derecha; que luego continuó recibiendo un tratamiento de fisioterapia hasta el día 16 de agosto, pero que no quedó con incapacidad alguna para el trabajo ni para andar;.....que el demandante ganaba $40 mensuales y estuvo ausente de su trabajo desde junio 18 hasta agosto 19 de 1937; no se ha probado si el demandante recibió dinero alguno durante ese tiempo y tampoco si fué compensado en alguna forma por las lesiones que recibió en el accidente, aun cuando podamos presumir, como dice el demandado, que estaba asegurado en el Negociado de Compensaciones del Gobierno Federal, aunque es cierto que el demandante no ha probado que tuviera que pagar nada por el tiempo que estuvo en el hospital ni

por el tratamiento que recibió. No ha habido, por lo tanto, prueba de daños específicos. Sí se ha probado, sin embargo, que las lesiones y tratamiento ocasionaron al demandante dolores y molestias, las que en él parecían mayores por su temperamento nervioso.''

Bajo esos hechos, su conclusión fijando la indemnización en quinientos dólares no es errónea, sino razonable.

El octavo y último de los errores señalados corresponde al segundo recurso de apelación, el establecido contra la resolución reduciendo y aprobando como reducido el memorándum de costas.

La corte concedió una indemnización de dos dólares a cada uno de los siete testigos del demandante que comparecieron y el apelante sostiene que como sólo declararon cinco la indemnización concedida a dos no está autorizada por la ley, y sostiene además que habiéndose reclamado tres mil dólares por daños y perjuicios y concedídose quinientos, no fué temerario al defenderse y no debió condenársele al pago de las costas.

En cuanto al primer extremo consta del récord que el abogado renunció a la declaración de dos de sus testigos por tratarse de prueba acumulativa. Todos comparecieron por la mañana y por la tarde y estuvieron sujetos a las reglas de la corte.

La ley aplicable—la 94 de 1937, pág. 239, enmendatoria del artículo 327 del Código de Enjuiciamiento Civil—dispone que se pagarán ''dos (2) dólares por cada testigo y por cada día de asistencia a la corte, más millaje para ida y vuelta a su residencia'', apartado tres del artículo como enmendado, de suerte que la comparecencia es la que debe tomarse en consideración. No erró, pues, la corte, al así resolverlo.

Claro es que si abusivamente una parte llevara a la corte un gran número de testigos innecesarios para no llamarlos luego a declarar y con el único propósito de reclamar después la indemnización de ley, surgiría un caso distinto. Aquí la actitud previsora de la parte está justificada. Pudo haber

necesitado las declaraciones que no usó, si aquéllas de que se valió le hubieran faltado o no hubieren sido del todo suficientes.

Y en cuanto a la temeridad, aparte de que a los efectos de la imposición de las costas solamente no es necesario que exista, ya que las costas siguen a la sentencia por mandato de la ley, parece conveniente decir que si bien la rebaja en la cuantía de la indemnización es una circunstancia favorable a considerar, no lo es de tal naturaleza que implique en absoluto la falta de temeridad del demandado al defenderse cuando como en este caso el énfasis de su defensa no fué puesto en una cuestión de cuantía si que en la no existencia de responsabilidad alguna por su parte y en ello no se le da la razón.

*Debe declararse sin lugar el recurso y confirmarse la sentencia y la resolución apeladas.*

El Juez Asociado Sr. Todd, Jr., no intervino.